**In re CEMETERY DEVELOPMENT CORPORATION (EIN 72–0859647), Debtor.**

**Sam GALLO, Chapter 11 Trustee, Plaintiff,**

v.

**Edwin J. HERPICH, Defendant.**

**In re AARONICS EQUIPMENT RENTALS AND SALES, INC. a/k/a Aaronics Welding Equipment Rentals (EIN 72–0929209), Debtor.**

**AARONICS EQUIPMENT RENTALS AND SALES, INC. a/k/a Aaronics Welding Equipment Rentals, Plaintiff,**

v.

**Isaac HAYNES d/b/a Isaac Haynes Construction, Defendant.**

**Bankruptcy Nos. 84–00663, 85–00449. Adv. Nos. 85–0097, 85–0124.**

United States Bankruptcy Court, M.D. Louisiana.

March 19, 1986.

See also, Bkrtcy., 57 B.R. 54, Bkrtcy., 56 B.R. 297.

William E. Steffes, Baton Rouge, La., for plaintiff in Adv. No. 85–0097.

Jack Patrick Harris, Baton Rouge, La., for plaintiff in Adv. No. 85–0124.

Michael H. Rubin, Baton Rouge, La., for defendant in Adv. No. 85–0097.

John C. Anderson and Randy P. Zinna, Baton Rouge, La., for defendant in Adv. No. 85–0124.

I. CEMETERY DEVELOPMENT COR-
PORATION—ADVERSARY 85–0097
MEMORANDUM OPINION ON MO-
TIONS TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION,
FOR ABSTENTION, AND FOR DE-
TERMINATION OF CORE STATUS

WESLEY W. STEEN, Bankruptcy Judge.

The Debtor brought this adversary proceeding against Edwin Herpich, alleging that the Debtor purchased a cemetery business on March 22, 1979, from HCB Development Corporation, an entity then owned entirely by the Defendant, and that in connection with the sale of assets, the Defendant breached certain warranties regarding the amount of HCB's liability to a "perpetual care fund" and to a "merchandise trust fund".[1] The Debtor asserts that the corporate veil of HCB Development Corporation should be pierced and that liability should be assessed against its sole shareholder, the Defendant Edwin Herpich, in the amount of $246,334 on account of these alleged failures to disclose liabilities, misrepresentations, and violations of warranty.

The Defendant's answer included numerous affirmative defenses. At a scheduling conference on September 24, 1985, the Court required an amendment of the answer and required that some issues be heard and determined in advance of trial on the merits. In compliance with the scheduling order, the Defendant filed a motion for discretionary abstention, a motion for determination of core status, and a motion to strike a demand for attorney's fees for failure to state a claim on which relief could be granted. A hearing was held on October 28, 1985, and both counsel have submitted memoranda. The Defendant did not file a motion to dismiss for lack of subject matter jurisdiction, but the issue was stated as a defense in the amended answer, and both counsel addressed the issue in memoranda. Accordingly, the

---

1. These are allegedly trust funds required by statute to protect those who purchase burial services and cemetery lots by assuring performance of the vendor's obligation to provide burial services and to provide perpetual care of the cemetery lot.

Court considers that question at issue to be determined in this memorandum opinion.[2]

### Jurisdiction Over the Subject Matter

One of the primary objectives of the Bankruptcy Reform Act of 1978 was the elimination of the dichotomy between summary and plenary jurisdiction and the concentration of all bankruptcy jurisdiction in a single forum.[3] Thanks to *Marathon* [4] and to the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), we no longer have the confusing dichotomy between summary and plenary jurisdiction; what we now have, unfortunately, is a confusing triple and potentially quintuple division of proceedings among "arising under," "arising in," "related to," "core," "noncore," and "otherwise related proceedings." [5]

Litigants routinely raise the issue of "jurisdiction over the subject matter". At least four different issues are frequently argued under this banner: (i) jurisdiction over the subject matter; (ii) abstention; (iii) classification as core/noncore; and (iv) withdrawal. A fifth issue that generally runs through the second and third issues is the constitutionality of BAFJA's scheme. Each issue involves different questions and tests. The first issue questions the author-ity of a federal court to hear and to determine the proceeding. Because the U.S. District Court is vested with extremely broad subject matter jurisdiction over proceedings merely "related" to a bankruptcy case, only rarely will a proceeding be outside the subject matter jurisdiction of the Court. The major limitation on the federal court's exercise of jurisdiction is the Court's authority to abstain; therefore, in many instances the issue should be abstention, not jurisdiction. However, the parties usually want to raise *Marathon* questions; after BAFJA this issue is neither an issue of jurisdiction nor an issue of abstention, but, instead, is a test of the bankruptcy judge's authority to hear and to determine the proceeding. The issue that the party should raise to determine the bankruptcy judge's authority is the determination of the "core/noncore" classification of the proceeding; the bankruptcy judge has authority to issue an order or judgment in core proceedings; the bankruptcy judge has the authority to hear noncore proceedings, but his authority is limited to the issuance of findings of fact and conclusions of law. If the litigant feels that sound reason exists to except the proceeding from

**2.** Pleading # 11 is entitled "Motion for Determination of the Noncore Status of This Proceeding." The pleading does not address dismissal for lack of subject matter jurisdiction and neither do the other two motions filed that date, pleadings # 9 and # 13. Nevertheless, the Defendant's brief, pleading # 8, is entitled "Defendant's Brief in Support of . . . Motions on Lack of Subject Matter Jurisdiction . . ." In memoranda and in oral argument counsel indicated that both thought the issue to be decided by the current opinion, and, therefore, the Court will treat pleading # 11 as a motion to dismiss for lack of subject matter jurisdiction as well as for a determination of core status.

**3.** The report of the Commission on Bankruptcy Laws of the United States discussed the problems arising from the summary/plenary jurisdictional allocations under the 1898 Act as follows: "There are . . . serious flaws in the present allocation of responsibility for handling the administrative and judicial functions to be performed by the Bankruptcy Act. . . . The first and most important objection to the present dispensation is the division of labor between the bankruptcy court and other courts. . . . There are several objectionable results to the division of the jurisdiction of the judicial business generated by bankruptcy cases. The first is delay . . . : Another objection to the division of jurisdiction is the extra expense entailed by the estate in litigating outside the bankruptcy court. . . . The most serious objection to the division of jurisdiction is the frequent, time consuming, and expensive litigation of the question whether the bankruptcy court has jurisdiction over a particular proceeding. As Professor McLachlan has observed: 'When a "summary" proceeding in the bankruptcy court is appropriate and when a plenary suit is required is one of the most involved and controversial questions in the entire field of bankruptcy.'" Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d. Cong., 1st Sess., Pts. I and II (1973) pp. 88–91.

**4.** *Northern Pipeline Construction Co. v. Marathon Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, (1982), cited in the text throughout merely as "*Marathon.*"

**5.** *Plus ça change, plus cést la même chose.*

these usual procedures, the proper issue is not jurisdiction, nor abstention, nor core/noncore classification; that issue is withdrawal. The basis for these conclusions is, unfortunately, more lengthy than their statement.

■ Under BAFJA, the starting point for bankruptcy jurisdictional analysis must be 28 U.S.C. § 1334. Section 1334(a) gives United States District Courts original and exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(b) gives to the United States District Courts original, but not exclusive, jurisdiction over civil proceedings that arise under title 11, civil proceedings that arise in a case under title 11, and civil proceedings that are related to a case under title 11. The "case" is the bankruptcy petition, encompassing all the numerous legal events that arise on account thereof; a "proceeding" is one of these numerous events in a bankruptcy case, such as a motion (contested matter) or an adversary proceeding initiated by complaint. Thus, the United States District Court has exclusive jurisdiction over the case and original jurisdiction over proceedings arising in and related to cases or arising under title 11 U.S.C.

As everyone knows by this time, § 1334 is a hard fought, years delayed Congressional compromise following the declaration by the United States Supreme Court in 1982 that the jurisdictional scheme established in the Bankruptcy Reform Act was unconstitutional; unfortunately, there is no legislative history to assist in the interpretation of BAFJA. However, there is legislative history for the virtually identical predecessor of § 1334: 28 U.S.C. § 1471(a) and (b). Therefore, if one substitutes "district court" for "bankruptcy court," the legislative history of the predecessor is instructive.[6]

> "Subsection (a) of this section gives the proposed bankruptcy courts original and exclusive jurisdiction of all cases under title 11. The jurisdiction granted under this provision is of the whole bankruptcy case. Subsection (b) governs jurisdiction of proceedings in the case.... Subsection (b) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the Bankruptcy Code. Actions that formerly had to be tried in state court or in federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts. The idea of possession or consent as the sole bases for jurisdiction is eliminated. The bankruptcy court is given *in personam* jurisdiction as well as *in rem* jurisdiction to handle everything that arises in a bankruptcy case.

> "The jurisdiction granted is of all proceedings arising under title 11 or arising under or related to a case under title 11. The bill uses the term 'proceedings' instead of the current 'matters and proceedings' found in the Bankruptcy Act and Rules. The change is intended to conform with the terminology of title 28, under which anything that occurs within a case is a proceeding. Thus, proceedings here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under current bankruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case.

> "The use of the term 'proceeding,' though, is not intended to confine the bankruptcy case. Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, proposed 11 U.S.C. 524(b), the existence of prohibited post-bankruptcy discrimination, proposed 11 U.S.C. 525, the validity of securities issued under a reorganized plan, and so on. The bankruptcy courts will be able to hear these proceedings because they arise under title 11.

---

**6.** *In re Salem Mortgage,* 783 F.2d 626 (6th Cir., 1986).

"The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11. Indeed, because title 11, the Bankruptcy Code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some way 'related to' a case under title 11. In sum, the combination of the three bases for jurisdiction, 'arising under title 11,' 'arising under a case under title 11,' and 'related to a case under title 11,' will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes.

"Examples of matters that the bankruptcy court will able to hear include all items listed by the Bankruptcy Commission in its proposed bill, H.R. 31, 94th Cong., 1st Sess. §§ 2–202(a), 2–201(b) (1975), or the equivalents to those items under title 11 as proposed by H.R. 8200, as well as all items that the bankruptcy courts are now able to bare (sic) under Bankruptcy Act § 2a(2A)." [7]

S. 2266 was the Senate version of the bill. It contained language identical to 28 U.S.C. § 1471 of the House bill. S.Rep. 989 accompanying the Senate bill contains language almost identical to that of the House report:

"In deference to concern over the splintering of the jurisdiction of the district courts, original and exclusive jurisdiction of all bankruptcy cases shall remain in the district court, and the jurisdiction of the district court over bankruptcy matters is expanded to include all controversies arising out of or related to a case under title 11....

"Subsection (b) grants to the U.S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This broad grant of jurisdiction will enable the bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction, to dispose of controversies that arise in bankruptcy cases or under the Bankruptcy Code. Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court. The idea of possession and consent as bases for jurisdiction is eliminated. The adjunct bankruptcy courts will exercise *in personam* jurisdiction as well as *in rem* jurisdiction in order that they may handle everything that arises in a bankruptcy case.

"The jurisdiction to be exercised by the bankruptcy courts is of all proceedings arising under title 11 or arising under or related to a case under title 11. The term 'proceeding' is used instead of 'matters and proceedings,' the terminology currently used in the Bankruptcy Act and Rules. As used in this section everything that occurs in a bankruptcy case is a proceeding. Thus, proceedings here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under current bankruptcy law. It also includes and (sic) disputes related to administrative matters in a bankruptcy case. Likewise, the term

7. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The phrase "arising under ... cases under title 11" in the committee report apparently

was enacted as "arising in ... cases under title 11" in the statute. The change appears to be insignificant; it avoids repetition of the consecutive word "under" in slightly different contexts.

proceeding includes issues which may arise after a case is closed ...

"The phrase 'arising under title 11' will enable the bankruptcy court to hear any matter under which a claim is made under a provision of title 11. The combination of the three bases of jurisdiction, 'arising under title 11,' 'arising under a case under title 11,' and 'related to a case under title 11,' will leave no doubt as to the scope of the jurisdiction over disputes to be exercised by the bankruptcy court." [8]

Congress apparently intended no change of this broad grant of jurisdiction when it enacted BAFJA since it reenacted precisely the same language that was in the Bankruptcy Reform Act. The only difference is that the broad grant of jurisdiction in BAFJA is vested in the United States District Court rather than in the Bankruptcy Court.

Therefore, interpreting § 1334(b) according to the legislative history of its identical statutory predecessor, one must conclude that the statute grants to the district court extremely broad jurisdiction; a proceeding is within this federal jurisdiction if it merely is somehow "related" to a bankruptcy case.[9]

The Third Circuit Court of Appeals has stated the test for related proceeding juris-

diction to be "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy".[10] The Third Circuit later reaffirmed the test, while denying jurisdiction [11]

"[T]he usual articulation of the test for determining whether a civil proceeding is related to a bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy ... an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."

The court in *Bobroff* held that mere common issues of fact were insufficient to classify the proceeding as "related to" a bankruptcy case, and, therefore a suit against the bank's attorneys for defamation was not related to the debtor's proceedings.[12]

 There are two limits on the Court's jurisdiction. First, the proceeding must be "related to" the bankruptcy *case;* the Court does not have jurisdiction over a proceeding merely related to or involving the *debtor.*[13] A second limitation on the

---

**8.** S.Rep. No. 95–989 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

**9.** "The emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinary broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." *In re Salem Mortgage,* 783 F.2d 626 (6th Cir., 1986).

**10.** *In re Pacor,* 743 F.2d 984, 994 (3rd Cir., 1984).

**11.** *In re Bobroff,* 766 F.2d 797 (3rd Cir., 1985).

**12.** *Accord: In re McRae Fire Protection, Inc.,* 49 B.R. 773 (Bkrtcy., E.D.Mich., 1985); *In re B.W. Development Company, Inc.,* 49 B.R. 129 (Bkrtcy., W.D.Ky., 1985); *In re Bowling Green Truss, Inc.,* 53 B.R. 391 (Bkrtcy., W.D.Ky., 1985): "If an action has a direct and substantive impact on the bankruptcy estate or its administration, then it is related to the bankruptcy case, and

jurisdiction exists. But if a controversy has only a vague or incidental connection with a pending case, and any impact its resolution may have on the bankruptcy case is speculative, indirect, or incidental, then the matter is unrelated to the bankruptcy case and we would not hear it." 53 B.R. 391, 394.

**13.** The Defendant in the proceeding at bar has posed a hypothetical "barking dog case." In his memorandum, Defendant's counsel asserts that it would be ludicrous to assume that an action to require the Debtor to quiet his barking dog would be within federal jurisdiction merely because the Debtor was the defendant in such an action. The Defendant's jurisdictional conclusion is correct; his analysis that reaches the conclusion, however, is faulty. To say that federal jurisdiction extends to proceedings *related to* a bankruptcy *case* is *not* to say that federal jurisdiction extends to proceedings *related to a debtor.* There is a distinction between the Debtor and his bankruptcy case; compare, for example, the differences in the interests and protections of the bankruptcy estate and the bankrupt-

Court's jurisdiction is the exercise of the authority (and in some cases the requirement) to abstain.[14]

 In the proceeding at bar, the Debtor asserts that the Defendant owes the bankruptcy estate $246,334. The Debtor further asserts that the trustee of the relevant trust funds has asserted a claim against the Debtor in that same amount. Finally, the Debtor alleges that these claims by the Debtor and these related claims against the Debtor arose out of commercial transactions that arose at and grew from the beginning of the Debtor's financial life and that the liabilities were the essence of the Debtor's business. The collection of the sum allegedly due from the Defendant would obviously directly impact the payment of claims against the estate; the claim arose precisely in the operation of the Debtor's business that gave rise to this bankruptcy proceeding. Therefore, the outcome of the proceeding would substantially affect the estate being administered in bankruptcy, and the proceeding is a related proceeding; the district court, therefore, has original jurisdiction, and the motion to dismiss for lack of subject matter jurisdiction will be denied.

### Determination of Core Status

Each analyst of BAFJA's jurisdictional puzzle states that there are three kinds of proceedings in bankruptcy cases; the analyst then gives a partial definition of "proceedings arising under" but fails to provide much definition of proceedings "arising in" or "related to." There are good reasons for both the analyst's compulsion and for the failure to achieve an adequate distinction. Part of the need to distinguish among proceedings "arising in," "arising under," or "related to" is that 28 U.S.C. § 157(b) permits bankruptcy judges to hear and to determine core proceedings that "arise under" title 11 and to hear and to determine core proceedings that "arise in" bankruptcy cases.[15] The statute does not refer to core "related proceedings" (if there is any such thing).

The reason for the inability to distinguish precisely among the terms is that the words were copied from another part of title 28 and are used in § 157 out of their original context. The words were not originally chosen for the purpose of distinguishing different types of proceedings, but rather with the intent to confer all-inclusive jurisdiction over bankruptcy proceedings. Therefore, there is no way merely from etymology to distinguish with any precision proceedings "arising under title 11" from proceedings "arising in a case under title 11" from proceedings "related to" a case under title 11. The legislative history specifically says so.

"The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions

---

cy debtor set forth in the § 362 stay. The reach and duration of that stay are different, depending on whether creditor action affects the bankruptcy case or merely affects the debtor without affecting the estate. The action to quiet the barking dog would usually not be a violation of the stay, although under some circumstances it might: *e.g.*, if the dog were a valuable show dog, if the dog were property of the estate, and if the proposed method to "quiet" the dog would result in substantial loss of value for creditors. "Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional (sic) intent in adopting the new bankruptcy laws."

*In re Salem Mortgage,* 783 F.2d 626 (6th Cir., 1986).

**14.** "Congress wisely chose a broad jurisdictional grant so that the district court could determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases.... The degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain." *In re Salem Mortgage,* 783 F.2d 626 (6th Cir., 1986).

**15.** *See,* for example, *In re Arnold Print Works, Inc.,* 54 B.R. 562, 13 BCD 883 (Bkrtcy., D.Mass., 1985).

under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. 525. *Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11. Indeed, because title 11, the Bankruptcy Code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some way 're-lated to' a case under title 11.* In sum, the combination of the three bases for jurisdiction, 'arising under title 11,' 'arising under a case under title 11,' and 'related to a case under title 11,' will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes." [Emphasis supplied.] [16]

Judge Lundin has done an outstanding job of pointing out the "holes in the matrix." [17] The simple answer, as discussed above, is that within the intendment of the selection of these words, proceedings "arising in" and proceedings "arising under" are both within the concept of proceedings "related to" a case under title 11.

■ It is unfortunate that the words chosen for one purpose were adopted in another context. As noted, 28 U.S.C. § 157(b)(2) authorizes bankruptcy judges to issue dispositive orders in core proceedings "arising under" or "arising in", but does not extend to noncore proceedings "related to." 28 U.S.C. § 157(c)(1) authorizes bankruptcy judges to hear proceedings "otherwise related to" bankruptcy cases and to furnish findings of fact and conclusions of law to the district court. The statute does not distinguish proceedings "related to" from proceedings "otherwise related to"; the best analysis is that proceedings "arising under" and "arising in" are also "related to," but that noncore proceedings are "otherwise related to" bankruptcy cases. 28 U.S.C. § 157(c)(2) authorizes a district court to refer a proceeding "related to" [18] a bankruptcy case for a hearing and dispositive order if the parties consent. Because the statute prescribes different procedural consequences for proceedings classified into these categories, and since the words themselves will not assist in defining the categories, one must find other means of determining whether the authority of a bankruptcy judge is to render a final order or is to issue proposed findings of fact and conclusions of law. Lacking legislative history and lacking an etymological basis for decision, one must turn to the cause of the statutory enactment and the objective to be achieved.

*Marathon* held unconstitutional at least part of the Bankruptcy Reform Act jurisdictional grant to non-Article III bankruptcy judges. BAFJA, in response to that ruling, made two significant changes: (i) it allocated the extremely broad jurisdiction to district courts instead of to bankruptcy courts, and (ii) it authorized the district courts to delegate to bankruptcy judges the authority to decide a nonexclusive laundry list of issues that easily can be interpreted to include all substantial issues arising in a bankruptcy case except:

(1) Those "otherwise related to" bankruptcy cases (28 U.S.C. § 157(c));

(2) Personal injury and wrongful death cases (28 U.S.C. § 157(b)(5));

(3) Proceedings involving both title 11 and other laws involving interstate commerce if a party timely moves for

**16.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977).

**17.** *Norton Bankruptcy Law Advisor,* No. 11, November, 1984, pp. 1–4.

**18.** The word "otherwise" appears before "related" in § 157(c)(1) but not in § 157(c)(2). This probably is an oversight, but does not destroy the thesis proposed in the text; in fact, it supports the thesis. A bankruptcy judge could issue a dispositive order in any related proceeding with consent of the parties, whether that proceeding is "core related" (arising in/arising under) or noncore "otherwise" related.

withdrawal of the proceeding to district court (28 U.S.C. § 157(d)).

■ The only fair reading of BAFJA, in historical context, is that Congress intended bankruptcy judges to decide all proceedings referred under 28 U.S.C. § 157(a) so long as two conditions are met: (i) the proceeding is central to the authority granted to Congress by the bankruptcy clause of the Constitution; and (ii) the proceeding is not excluded from the authority of non-Article III judges by the Constitution.

With respect to the first test, we have two guidelines. First, since 1898, bankruptcy referees have exercised authority with respect to a broad range of issues. Almost a century of consistent practice deserves substantial respect and should not be lightly and completely rejected by a recently announced Constitutional mandate stated in an opinion that lacks a test approved by a majority of the Court. Second, Congress itself distilled the historic practice into an illustrative list of core issues. Whenever an issue can reasonably be considered to be included within the illustrative list, therefore, and so long as the issue is not excluded by the second test, the issue is a core proceeding to be determined by the bankruptcy judge.

■ The second test is much more difficult because the only substantial authority on point is *Marathon* itself, which, unfortunately, has no majority opinion. If one can conclude anything from *Marathon* with any reasonable degree of confidence, the conclusion is that a non-Article III judge may not Constitutionally adjudicate an adversary proceeding brought by the Debtor asserting a prepetition claim *in personam* against a Defendant who has not filed a claim in the bankruptcy proceeding when the Debtor's cause of action asserts a breach of contractural warranty and the cause of action is governed by state substantive law. Absent further Constitutional guidance, this Court concludes that the Constitutional stricture goes no further.

■ But this decision need go no further; the instant issues are precisely those that *Marathon* prohibits from being decided by non-Article III judges. Consequently, the proceeding does not qualify under the second test as the type of proceeding that a bankruptcy judge may determine without consent of the parties; it is not a core proceeding. Under the authority of 28 U.S.C. § 157(c)(1) and Local Rule 29, the undersigned bankruptcy judge will hear this "otherwise related proceeding" and will issue proposed findings of fact and conclusions of law.

## Abstention

### A. Whether Abstention is Appropriate

There is very little guidance with respect to when abstention is appropriate. The statutory language provides three bases for abstention:

1. "[T]he interests of creditors and the debtor would be better served by such dismissal or suspension" (11 U.S.C. § 305);

2. "[I]n the interest of justice, or in the interest of comity with State courts or respect for State law" (28 U.S.C. § 1334(c)(1));

3. "[I]n a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11 with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section ... if an action is commenced and can be timely adjudicated, in a State forum of appropriate jurisdiction." (28 U.S.C. § 1334(c)(2)).

There has been no allegation or evidence that the first ground applies; moreover, the first ground appears to apply only to dismissal of the case; suspension of proceedings appears possible under § 305, but not dismissal. The jurisprudence has consistently held that the third ground applies only when the proceeding was begun prior to the filing of the bankruptcy proceed-

ing.[19] Therefore, the only applicable statutory ground is 28 U.S.C. § 1334(c)(1).

The legislative history of the predecessor statute indicates that abstention is appropriate in the circumstances discussed in *Thompson v. Magnolia Petroleum*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).[20] That case held that the bankruptcy court abused its discretion by determining real property rights when state law was the sole determinant of the legal rights at issue and when the state law was so unsettled that conflicts within the courts might be settled by federal courts as a result of the "accident of federal jurisdiction" in an area of state law supremacy. The Defendant asserts in the proceeding at bar that abstention is appropriate in this proceeding because there is no clearly dispositive state law and because the issues are governed by state law.

But there are substantial distinctions between *Thompson v. Magnolia Petroleum* and the instant proceeding. First, the former involved solely issues of real property law whereas the instant proceeding involves contractual rights of warranty.[21] Second, the issues in the *Thompson* case were *solely* issues of state law; the Debtor in the proceeding at bar asserts that issues of federal securities law may also be involved. Third, the legal principle in *Thompson* apparently involved conflicting decisions within the state circuit courts; the Defendant points out in the proceeding at bar no such conflicts, but suggests that there is *no* reported decision of a state court on some of the issues; it therefore does not appear to be an area of conflicting state court interpretation or, indeed, of any significant state interest whatsoever.

Beyond the legislative history citing *Thompson*, there is very little in the legislation or the legislative history to assist in an interpretation of when a federal court should abstain. The recent jurisprudence has been mixed. Some courts have been quick to abstain: abstention is appropriate when the basis of a claim is unclear and must derive from state law, even when the same facts are to be heard by the bankruptcy judge to determine core issues;[22] abstention is appropriate when the outcome of the proceeding will not affect a creditor's recovery;[23] since bankruptcy judges do not have authority to hear jury trials, the court should abstain when a party has a right to a jury;[24] abstention is appropri-

---

**19.** *In re Boughton*, 49 B.R. 312 (Bkrtcy., N.D.Ill., 1985); *In re Arnold Print Works, Inc.*, 13 BCD 883, 54 B.R. 562 (Bkrtcy., D.Mass., 1985); *In re Excelite Corporation*, 49 B.R. 923 (Bkrtcy., N.D. Ga., 1985); *In the Matter of First Landmark Development Corporation*, 51 B.R. 25 (Bkrtcy., M.D.Fla., 1985).

**20.** Again, the only legislative history is the committee reports associated with the predecessor statute, 28 U.S.C. § 1471, which is virtually identical with the BAFJA enactment. "Subsection (c) permits the bankruptcy court, in the interests of justice, to abstain from hearing a particular proceeding arising under title 11 or arising under or related to a case under title 11, and makes the abstention, or a decision not to abstain unreviewable. The subsection recognizes the exigencies that arise in such cases as *Thompson v. Magnolia Petroleum*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), in which it is more appropriate to have a State court hear a particular matter of State law. The bankruptcy courts will not abstain, however, where no other court, Federal, State, local, has jurisdiction over the proceeding in question. That clearly would not be in the interest of justice." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. (1977).

**21.** Real property law is an area of particular significance to the states, and the thrust of *Thompson v. Magnolia Petroleum* might well be limited to that type of issue: *See, e.g., In re Starns*, 52 B.R. 405 (D., S.D.Tex., 1985); footnote 27.

**22.** *In re Douthit*, 47 B.R. 428 (D.C., M.D.Ga., 1985). *See also, In re Illinois-California Express, Inc.*, 50 B.R. 232 (Bkrtcy., D.Col., 1985) which finds a Congressional policy that state law issues be decided in state courts and would abstain in all noncore proceedings that would not be in federal court "but for" the filing of a bankruptcy proceeding; *In re Sweeney*, 49 B.R. 1008 (D.C., N.D.Ill., 1985) indicating that abstention is appropriate in all *Northern Pipeline* type proceedings grounded in state law.

**23.** *In re Ghen*, 45 B.R. 780 (Bkrtcy., E.D.Pa., 1985).

**24.** *In re American Energy, Inc.*, 50 B.R. 175 (Bkrtcy., D.N.D., 1985).

ate when the court is simply "too busy."[25] Other courts have been very reluctant to abstain: abstention is not appropriate in noncore proceedings if the issues are inextricably interwoven with core issues or are very similar to core issues;[26] abstention is "an extraordinary and narrow exception to the duty of federal courts to adjudicate controversies which are properly before it."[27] Obviously, the courts have not agreed on when abstention is appropriate. One more attempt at a formula might be useful:

■ 1. *Absent demonstrated or apparent reason to abstain, the federal court should exercise its jurisdiction conferred by Congress.* The legislative history indicates that broad jurisdiction was vested in federal courts as a result of the conclusion that piecemeal litigation in multiple forums was inefficient and with the expectation that bankruptcy court adjudication would be more rapid. Second, 28 U.S.C. § 1334(c) does not by its terms encourage abstention; it simply states that the grant of jurisdiction *does not prevent* abstention. The choice of such language does not support a conclusion that Congress intended to promote abstention, but rather supports a conclusion that Congress did not wish to leave a misimpression that abstention was not allowed.

2. *Abstention is committed to the absolute discretion of the court.* This principle appears clearly from the fact that a decision to abstain (and under 11 U.S.C. § 305 a decision not to abstain as well) is not reviewable "by appeal or otherwise."

■ 3. *The court should abstain only for limited reasons.* Section

1334(c)(1) lists three, and only three, reasons for discretionary abstention: (i) interest(s) of justice; (ii) comity with state courts; (iii) respect for state law. The statute does not suggest abstention for such reasons as the bankruptcy judge's inability to enter final judgment or the bankruptcy judge's inability to conduct a jury trial,[28] unless these difficulties result in the conclusion that abstention is necessary "in the interest of justice." Both of these problems can be met by abstention, by withdrawal of the proceeding to the district court, or by submission of findings and conclusions to the district court for entry of a final judgment. Therefore, when the bankruptcy judge cannot afford complete relief, the question should not be limited to whether or not to abstain, but should include whether abstention or withdrawal better serves the interest of justice and whether submission of findings and conclusions in noncore proceedings would adequately serve the interest of justice. Regarding comity and respect for state law, the legislative history indicates that abstention is appropriate to avoid federal judicial decision of an issue of particular state concern which involves conflicting and unsettled state property law that would not be before a federal court except for the accident of bankruptcy. While the Court could, no doubt, exercise its discretion to abstain when not *all* of the *Thompson* criteria are present, the Court should nonetheless be guided by the Congressional policy of adjudication in a single forum absent cause that justifies a different conclusion within the intended parameters.

■ 4. *Abstention should not be determined merely by whether or not the*

---

**25.** *In re Schear & Associates, Inc.,* 47 B.R. 544 (Bkrtcy., S.D.Fla., 1985).

**26.** *In re Arnold Print Works, Inc.,* 54 B.R. 562, 13 BCD 883 (Bkrtcy., D.Mass., 1985); *In the Matter of Shell Materials, Inc.,* 50 B.R. 44 (Bkrtcy., M.D.Fla., 1985) which held that the general rule might be to abstain on issues in which a dispositive order could not be rendered; but even if this was the general rule, it would not apply to any proceeding in which the court would hear the same facts as part of a core proceeding.

**27.** *In re All American of Ashburn, Inc.,* 49 B.R. 926, 13 BCD 93 (Bkrtcy., N.D.Ga., 1985). *See also, In re Bell & Beckwith,* 50 B.R. 437 (Bkrtcy., W.D.Ohio, 1985).

**28.** This opinion does not conclude that a bankruptcy judge may not conduct a jury trial. It merely recognizes that some decisions have justified abstention on such a conclusion: *See, e.g., In re American Energy, Inc.,* 50 B.R. 175, 13 BCD 200, 13 CBC 2d 232, (Bkrtcy., D.N.D., 1985).

*proceeding is based on state substantive law nor by whether or not it is a core proceeding.* If the application of state law determined whether the court should abstain, then the court should abstain in some core issues (for example, avoidance of a transfer based on the state fraudulent conveyance statute). Yet the statute provides that applicability of state law does not determine core status,[29] and the courts have rather uniformly concluded that they should not abstain in core proceedings. In addition, if Congress intended the district court to abstain in all noncore proceedings, the provision of jurisdiction over such proceedings is meaningless and a wasteful exercise for the court to acquire jurisdiction only to abstain; if Congress intended the court to abstain whenever the bankruptcy judge could not enter a final order, then 28 U.S.C. § 157(c) is meaningless.

■ There has been no showing of any grounds for abstention in the proceeding at bar except the dearth of state court precedent and the foundation of the proceeding, at least in main, on state substantive law. That does not appear sufficient to justify abstention.

### B. Who Determines Whether to Abstain

■ It is not clear under existing law whether a decision to abstain or not to abstain should be made by the bankruptcy judge or by the district judge. 11 U.S.C. § 305 merely states that "the court" may abstain. 28 U.S.C. § 1334(c) states that the "district court" may abstain.

Since all jurisdiction is vested in the district court, and since the bankruptcy court is a part, a "unit", of the district court,[30] abstention under any circumstances is by the district court since there *is no other* relevant federal court. The issue really is whether the decision to abstain or not to abstain can only be made by the district judge or whether the decision can be delegated to the bankruptcy judge; if it can be so delegated, a further question is whether it has been so delegated.

The thread on which hangs the constitutionality of a bankruptcy judge's jurisdiction is the possibility that somehow the selection and supervision of bankruptcy judges by Article III judges is an implied permissible exception to the Constitutional requirement of life tenure and salary security for those who exercise the judicial power of the United States. If a decision is, by statute, "not reviewable by appeal *or otherwise* " [emphasis supplied], then logically the decision cannot be made by an official whose legitimacy depends upon authoritative review of his actions. Therefore, a bankruptcy judge cannot determine an issue that is not reviewable.

A decision under 11 U.S.C. § 305 to abstain or not to abstain "is not reviewable by appeal *or otherwise.*" [emphasis supplied]. A decision *to abstain* under 28 U.S.C. § 1334(c) is not subject to review "by appeal or otherwise"; the statute expressly so provides. Apparently, however, a decision *not to abstain* under § 1334(c) is reviewable, since the statute does not exclude such review.[31] The entire subsection reads as follows:

"(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 [11 USCS §§ 1 et seq.] or arising in or related to a case under title 11 [11 USCS §§ 1 et seq.].

"(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 [11 USCS §§ 1 et seq.] but not arising under title 11 [11 USCS §§ 1 et seq.] or arising in a case under title 11 [11 USCS §§ 1 et seq.], with respect to which an action could not have

---

29. 28 U.S.C. § 157(b)(3).

30. 28 U.S.C. § 151.

31. *Collier on Bankruptcy,* 15th Ed., ¶ 3.01[3][b] fn 60 quotes floor debate that supports this conclusion.

been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. *Any decision to abstain made under this subsection is not reviewable by appeal or otherwise.* This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code [11 USCS § 362], as such section applies to an action affecting the property of the estate in bankruptcy." [emphasis supplied].

If the emphasized sentence applies both to subparagraphs (1) and (2) of subsection (c),[32] and if constitutionally a bankruptcy judge's decision *must* be subject to review, then a bankruptcy judge might be delegated the authority not to abstain, but may not constitutionally have the power to abstain. Fairness would seem to require that a judicial officer who considers an issue should have the authority to issue the correct decision; limiting the judge's authorized responses would effectively prejudge the issue. Therefore, the Local Rules of the Middle District of Louisiana leave the decision of all abstention motions to the District Court.[33]

After consideration of the four criteria discussed above, the undersigned bankruptcy judge concludes that abstention is not appropriate and recommends to the United States District Judge that the Court not abstain in the instant proceedings.

### Motion to Strike the Demand for Attorney's Fees

It is not possible at this stage of the proceeding to determine which, if any, legal basis might entitle the Debtor to recovery. Some statutes entitle a successful complainant to attorney's fees and some do not. Therefore, the motion to strike is denied, and that issue will be determined when the Court determines whether the Debtor is entitled to any other relief.

## II. ABSTENTION RECOMMENDATION IN AARONICS EQUIPMENT RENTALS VS. HAYNES—ADVERSARY 85–0124

The Court also has under advisement a recommendation to the District Court concerning abstention in Adversary No. 85–0124, Aaronics Equipment Rentals and Sales, Inc., a/k/a Aaronics Welding Equipment Rentals vs. Isaac Haynes, d/b/a Isaac Haynes Construction. The facts of that proceeding are quite different from the Cemetery Development proceeding. In Aaronics, the Debtor brought a simple suit on open account; the Defendant is a foreign corporation with no contacts in the Middle District of Louisiana except that it leased a Caterpillar tractor from the Debtor, prepetition; the tractor was delivered by the Debtor to Mississippi for use there. The Debtor asserts that the Defendant owes $3,690 for rental; the Defendant as-

---

**32.** The draftmanship of this subsection makes it difficult to interpret. The statement appears to be in 28 U.S.C. § 1334(c)(2). But it applies to a "subsection." Presumably, it applies to subsection (c) of section 1334, *i.e.*, it applies to both subparagraphs (1) and (2) of subsection (c). *See Colliers on Bankruptcy,* 15th Ed., ¶ 3.01[3][a]. The prior contrary interpretation by this Court in *In re S.E. Hornsby & Sons Sand and Gravel Co., Inc.,* 45 B.R. 988 (Bkrtcy., M.D. La., 1985) is recanted.

**33.** In summary, it would appear that there are four possible decisions of a motion to abstain:

(1) A decision to abstain under 11 U.S.C. § 305;

(2) A decision not to abstain under 11 U.S.C. § 305;

(3) A decision to abstain under 28 U.S.C. § 1334(c);

(4) A decision not to abstain under 28 U.S.C. § 1334(c).

The Bankruptcy Judge could validly make only decision # 4 of this scheme. Because it makes much more sense to have only one determination by a judge with a full arsenal of responsive decisions, the Local Rules of the Middle District of Louisiana leave all abstention decisions to the District Court. Several other courts have agreed: *In the Matter of First Landmark Development Corporation,* 51 B.R. 25 (Bkrtcy., M.D. Fla., 1985); *In re Schear & Associates, Inc.,* 47 B.R. 544 (Bkrtcy., S.D.Fla., 1985); *Contra: In the Matter of Shell Materials, Inc.,* 50 B.R. 44 (Bkrtcy., M.D.Fla., 1985); *In re Cash Currency Exchange,* 762 F.2d 542 (7th Cir., 1985).

serts that it owes nothing because the Debtor did not perform its obligation to supply a Caterpillar tractor in operable condition.

For reasons discussed above, the Court has jurisdiction over the subject matter. Also for reasons discussed above, the Court concludes that this is not a core proceeding.

 Because the Defendant is a nonresident whose witnesses are located at some distance from the court, because of the amount involved and cost and inconvenience of the parties to try the proceeding in this forum, the undersigned Bankruptcy Judge concludes that abstention is in the interest of justice and recommends that the District Court abstain from hearing the proceeding.