**In re GWF INVESTMENT, LTD., Debtor.**

**Frederic E. GAGEL, Plaintiff,**

**v.**

**KINGSTON–GREENE PARTNERS, LTD., et al., Defendants.**

Bankruptcy No. 3–81–00699.
Adv. Nos. 3–81–0428, 3–81–0337.

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 25, 1988.

Horace W. Baggott, Jr., Dayton, Ohio, for Frederick E. Gagel.

Gary W. Crim, Dayton, Ohio, for trustee for GWF Inv. Co.

Thomas R. Noland, Dayton, Ohio, for defendants.

## DECISION AND ORDER DISMISSING ADVERSARY PROCEEDINGS FOR LACK OF JURISDICTION

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon a remand from district court to review the captioned cause and to make a determination of this court's subject matter jurisdiction in view of post-*Northern Pipeline* jurisprudence and statutory enactments.

### I. PROCEDURAL HISTORY

GWF Investment, Ltd. ("Debtor") was a debtor in this court under chapter 11 of the Bankruptcy Code and an Ohio general partnership with two partners: Frederic E. Gagel and W & F Investment Company (also an Ohio partnership whose partners are Wilfrey Management Company, the estate of Steven F. Williams and H. Garrett Frey). (See attached Exhibit A which illustrates the complex relationships of the partnerships involved herein.) On May 26, 1981 Debtor filed a complaint (Adversary Proceeding 3-81-0337) against H. Garrett Frey and Kingston Greene Partners, Ltd. The complaint seeks $102,483 for money advanced by Debtor to the defendants to rehabilitate Kingston Greene Apartments.

On June 30, 1981 H. Garrett Frey filed an application (Adversary Proceeding 3-81-0428) to remove a certain state court action from the Common Pleas Court of Butler County, Ohio to this court. The state court action had previously been filed by Frederic E. Gagel against Kingston Greene Partners, Ltd., H. Garrett Frey, the law firm of Graydon, Head and Ritchey, and John L. Evans, Jr. In his state court complaint Mr. Gagel demanded $145,875 from Kingston Greene Partners, Ltd. for money had and received and demanded that the deed of Kingston Greene Apartments, which had

been executed and delivered by him to Kingston Greene Partners, Ltd., be delivered up and cancelled and that he be restored to the ownership of the premises. Mr. Gagel also demanded damages from the other defendants for fraud and false representations in connection with the transfer of the deed of Kingston Greene Apartments.

On September 8, 1981 the two adversary proceedings were ordered consolidated by the bankruptcy court. Subsequently, the court granted leave for Mr. Gagel to join Wilfrey Investment Company (the alleged general contractor for the rehabilitation of Kingston Greene Apartments) and Wilfrey Management Company (a partner of Wilfrey Investment Company) as parties in these proceedings.

On July 22, 1982 Hon. Charles A. Anderson, United States Bankruptcy Judge, found that the bankruptcy court, pursuant to former 28 U.S.C. § 1471, had jurisdiction to adjudicate the adversary proceedings and "that all the alleged claims of Plaintiff arise from a single continuing transaction and bifurcation of the issues could lead to conflicting results...." [Doc. No. 29; Adv.Pro. 3-81-0428] Judge Anderson also denied a motion of Mr. Gagel to remand the removed state court action to the Common Pleas Court of Butler County, Ohio.

On September 14, 1982 Judge Anderson, upon representation of a settlement having been reached, dismissed with prejudice the claims of Mr. Gagel against the law firm of Graydon, Head and Ritchey, and those against John L. Evans, Jr.

On January 11, 1983 Judge Anderson *sua sponte* reviewed the bankruptcy court's jurisdiction in light of the Supreme Court's decision of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and found that jurisdiction of the type of litigation involved in the instant adversary proceedings was "vested only in the state courts." As a result Judge Anderson remanded Adversary Proceeding 3-81-0428 to state court and abstained

from deciding Adversary Proceeding 3–81–0337. The orders of remand and abstention were appealed to district court. The matter is now before this court upon instructions of the district court to determine in accordance with post-*Northern Pipeline* judicial decisions and statutory enactments whether bankruptcy jurisdiction exists to decide these two adversary proceedings.

## II. NORTHERN PIPELINE AND THE "EMERGENCY RULE"

On June 28, 1982 the Supreme Court concluded in a plurality opinion, *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that:

> 28 U.S.C. § 1471 (1976 ed., Supp. IV), as added by § 241(a) of the Bankruptcy Act of 1978, has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts. *Id.* at 87, 102 S.Ct. at 2880.

To "afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws," the Court stayed its judgment until October 4, 1982. *Id.* at 88, 102 S.Ct. at 2880. Upon motion of the Solicitor General, the Court extended its stay of judgment until December 24, 1982, 459 U.S. 813, 103 S.Ct. 199, 74 L.Ed. 2d 160, but despite Congress' failure to enact remedial legislation, refused the Solicitor General's request for an additional stay of its judgment, 459 U.S. 1094, 103 S.Ct. 662, 74 L.Ed.2d 942.

In anticipation of Congressional inaction, the Judicial Conference stepped into the breach by adopting a resolution requiring the Director of the Administrative Office of United States Court to "provide each circuit with a proposed rule," which was to take effect in the absence of congressional action. The resolution was intended "to permit the bankruptcy system to continue without disruption in reliance on jurisdictional grants remaining in the law as limited by" the *Northern Pipeline* decision. Countryman, *Scrambling to Define Bankruptcy Jurisdiction: The Chief Justice, the Judicial Conference, and the Legislative Process,* 22 Harv.J. on Legis., 1, 19 (1985) (footnotes omitted).

After the Administrative Office drafted a model rule, the Judicial Councils of the eleven circuits directed the district courts to adopt the model rule. With respect to this court's circuit,

> [t]he Judicial Council of the Sixth Circuit determined in December that *Northern Pipeline* was about to create a situation of extreme uncertainty and disarray in the courts of this circuit. Consequently, the Council concluded that "the uniform effective and expeditious administration of justice within this Circuit requires that the attached rule for the administration of the bankruptcy system in this Circuit be adopted by the District Courts...." *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 262 (6th Cir. 1983) (quoting Order of the Judicial Council of the Sixth Circuit, December 21, 1982). [The "attached rule" appears at 704 F.2d 265.]

Subsequently, Hon. Carl Rubin, Chief Judge for the Southern District of Ohio adopted the model rule which became known as the "Emergency Rule" or the "Interim Rule." Many, if not most, bankruptcy judges and scholars found *Northern Pipeline* to be enigmatic and raised serious questions about the remaining scope of bankruptcy jurisdiction and the validity of the Emergency Rule (which was dependent on the survival of bankruptcy jurisdiction in the district courts). In the instant proceedings Judge Anderson's decision to remand one adversary proceeding and to abstain from deciding the other was grounded on the rationale contained in his previous decision of *Winters National Bank and Trust Co. v. Schear Group (In re The Schear Realty and Investment Co.),* 25 B.R. 463 (Bankr.S.D.Ohio 1982), in which he detailed his reservations concern-

ing the Emergency Rule. In brief, Judge Anderson found that once the judgment of *Northern Pipeline* became effective neither the bankruptcy courts *nor* the district courts had jurisdiction to decide state law causes of action and that district courts by use of the Emergency Rule could not supply the requisite jurisdiction. Subsequently, however, the Sixth Circuit included *Schear Realty* in an illustrative listing of cases with which it disagreed. *See White Motor Corp. v. Citibank, N.A., supra,* 704 F.2d at 259, and held that "[former] §§ 1471(a) and (b) giving the district courts original jurisdiction in all cases under Title 11 were not affected by the Supreme Court's decision in *Northern Pipeline," Id.* at 260, and that the bankruptcy courts possessed derivative jurisdiction to determine bankruptcy matters. In the Sixth Circuit's view the Supreme Court invalidated only former § 1471(c), which had conferred direct, nonderivative bankruptcy jurisdiction on the bankruptcy courts:

> The interim rule does not violate the Constitution because the district courts retain primary jurisdiction over all bankruptcy proceedings. The bankruptcy courts have only derivative jurisdiction. They do not operate under an exclusive grant of jurisdiction as in § 1471(c) but rather derive their jurisdiction from the district court as under the Chandler Act. The district courts retain control and primary responsibility for the conduct of bankruptcy proceedings. The interim rule implants sufficient mechanisms in the existing system to ensure that bankruptcy cases are resolved through a constitutionally valid process. *Id.* at 263.

With the benefit of twenty-twenty hindsight, it must be concluded that the bankruptcy court, on the basis of a lack of jurisdiction, improperly remanded and abstained with respect to the adversary proceedings in this case. During the effective period of the Emergency Rule bankruptcy jurisdiction existed to decide these matters.

## III. BANKRUPTCY AMENDMENTS AND FEDERAL JUDGESHIP ACT OF 1984

In 1984 the long-awaited Congressional response to *Northern Pipeline* was enacted as part of the "Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 ("BAFJA")." Of importance to the instant adversary proceedings are the following jurisdictional provisions:

Sec. 1334 Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

. . . .

(d) The district court in which a case under title 11 is commenced of is pending shall have exclusive jurisdiction of all of the property, wherever located, or the debtor as of the commencement of such case, and of property of the estate. 28 U.S.C. § 1334.

### A. *Basic Concepts of Section 1334*

Section 1334 lists four types of matters within the jurisdiction of the district court:

1) "Cases" under title 11;

2) civil proceedings "arising under" title 11;

3) civil proceedings "arising in" cases under title 11;

4) civil proceedings "related to" cases under title 11.

Section 1334(a) confers original and exclusive jurisdiction of all "cases" under title 11 unless provided otherwise in Section 1334(b). " 'Case' comprises the entire Chapter 7, 9, 11, or 13 case that is commenced by the filing of a petition. Disputes which arise during the pendency of a case are referred to in § 1334(b) as 'proceedings', and there may be numerous proceedings within a case." *Block v. Anthony Tammaro, Inc. (In re Anthony Tam-*

*maro, Inc.),* 56 B.R. 999, 1001 n. 2 (D.N.J. 1986) (quoting King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand.L.Rev. 675, 676–77 (1985)). "The 'case' referred to in section 1334(a) is the case upon which all of the proceedings which follow the filing of a petition are predicated. The filing of a petition for relief constitutes commencement of the title 11 case." 1 *Collier on Bankruptcy,* ¶ 3.01, p. 20 (15th ed. 1987). *Collier* also points out that the exclusivity of the jurisdiction for bankruptcy cases "is intended to make it clear that no jurisdiction over title 11 *cases* is left to the state courts." *Id.* (Emphasis Supplied).

According to the legislative history to the Bankruptcy Code of 1978,

> [t]he phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear *any matter under which a claim is made under a provision of title 11.* For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be *claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11.*" H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6401 (Emphasis Supplied).

For a proceeding to "arise under" title 11, it appears that a party must be claiming a right or remedy created by one of the specific sections of title 11.

Less certain in scope is a proceeding "arising in" a case under title 11. "The meaning of 'arising in' proceedings is less clear, but seems to be a reference to those 'administrative' matters that arise *only* in bankruptcy cases." *Wood v. Wood (Matter of Wood),* 825 F.2d 90, 97 (5th Cir.1987). Illustrative of this category of proceedings are such matters as allowance and disallowance of claims, discharges, confirmation of plans and orders to obtain credit. 1 *Collier on Bankruptcy* ¶ 3.01, p. 27 (15th ed. 1987). *Collier* also makes the valid observation that "[i]n none of these instances is there a cause of action created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of bankruptcy a case." *Id.*

Logically, a proceeding "related to" a case under title 11 does not furnish a separate jurisdictional predicate. It is self-evident that any proceeding "arising under title 11" or "arising in" a case under title 11 may be viewed also as "related to" a case under title 11.[1] But jurisprudentially the phrase "related to" has evolved into a separate category of matters that neither arise under title 11 nor arise in a case under title 11 but are sufficiently connected to the bankruptcy case to remain within the ambit of bankruptcy jurisdiction. In the Sixth Circuit the test for relatedness is whether "the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy." *Kelley v. Salem Mortgage Co. (In re Salem Mortgage Co.),* 783 F.2d 626, 634 (6th Cir.1986).

### B. *Comparison of Pre– and Post–BAFJA Jurisdiction*

Sections 1334(a) and (b) contain the identical language of former sections 1471(a)

---

1. One of the fundamental difficulties in attempting to categorize a proceeding as "arising under," "arising in," or "related to" is that Congress' intent in using these three jurisdictional phrases was not to create three mutually exclusive jurisdictional bases, but rather to indicate the expansive and comprehensive nature of bankruptcy jurisdiction under the Bankruptcy Reform Act of 1987, e.g. "In sum, the combination of the three bases for jurisdiction, 'arising under title 11,' 'arising under a case under title

11,' and 'related to a case under title 11,' will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes." H.R.Rep. No. 595, *supra* at 445–446, U.S.Code Cong. & Admin.News 1978, at 6401. Only after *Northern Pipeline* did it become necessary to begin pigeonholing bankruptcy proceedings into a jurisdictional matrix. Prior to that, a finding that a proceeding was at least "related to" a case under title 11 was sufficient for a bankruptcy court to assume jurisdiction.

and (b). The critical difference between § 1334 and former § 1471 is that the district court's bankruptcy jurisdiction is no longer automatically shifted by statute to the bankruptcy courts as it was under former § 1471(c). Instead, 28 U.S.C. § 157(a) permits each district court to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for that district. On July 30, 1984 the Chief Judge for the Southern District of Ohio entered such an order of reference.

One of the inquiries to be conducted by this court in response to the district court's order of remand is into the differences in bankruptcy jurisdiction during the periods preceding and following the enactment of BAFJA. According to the Fifth Circuit Court of Appeals the scope and extent of pre-BAFJA bankruptcy jurisdiction are identical to that of bankruptcy jurisdiction following the enactment of BAFJA, but the locus of that jurisdiction is different:

> Nothing in *Marathon* suggests that we should read the corresponding provisions of the 1984 Act differently. The jurisdictional provision of the 1978 Act, section 1471, accomplished two things. First, subsection (b) vested an expansive jurisdiction in the district courts. Second, subsection (c) conferred the power to exercise that jurisdictional grant in the bankruptcy courts. The issue in *Marathon* was not the constitutionality of subsection (b), but the constitutionality of subsection (c). *Marathon* held that Congress could not vest the whole of bankruptcy jurisdiction in bankruptcy courts because the jurisdictional grant encompassed proceedings too far removed from the "core" of traditional bankruptcy powers to allow them to be adjudicated by non-Article III judges. The holding in *Marathon* suggests no concern over the constitutionality of the scope of bankruptcy jurisdiction defined by Congress; its concern is with the *placement* of that jurisdiction in non-Article III courts. In response to *Marathon*, Congress altered the placement of bankruptcy jurisdiction by creating a statutory distinction between core and non-core proceedings and restricting the power of bankruptcy courts to adjudicate the latter. Because *Marathon* did not compel Congress to reduce the scope of bankruptcy jurisdiction, it seems plain that Congress intended no change in the scope of jurisdiction set forth in the 1978 Act when it later enacted Section 1334 of the 1984 Act. *Wood, supra,* 825 F.2d at 92–93.

The Sixth Circuit Court of Appeals also concluded that the scope of bankruptcy jurisdiction remained unaltered:

> After the Supreme Court struck down section 1471(c) in *Northern Pipeline ...,* Congress enacted the new jurisdictional statute in 28 U.S.C. § 1334.... Section 1334(a)-(b) retains the prior jurisdictional language, and there is every reason to believe that Congress had no desire to contract the jurisdictional grant in any way. Congress could, after all, have easily cured the constitutional infirmity announced in *Northern Pipeline* by restricting the bankruptcy courts to their prior jurisdiction under the Bankruptcy Act of 1898. *Salem Mortgage, supra,* 783 F.2d at 633 n. 17.

In its effort to cure the constitutional infirmities of the 1978 Bankruptcy Code, Congress created a statutory distinction between "core" proceedings and "non-core" proceedings. Jurisdiction to determine bankruptcy matters with finality depends on which category a certain proceeding may fall within. All "cases" under title 11 and all "core" proceedings arising under title 11, or arising in a case under title 11, may be heard and determined by a bankruptcy judge. 28 U.S.C. § 157(b)(1). In the case of a proceeding that is not a core proceeding, but is "otherwise related" to a case under title 11, the bankruptcy judge may hear the proceeding but not finally determine the matter. The bankruptcy judge's role in "non-core" proceedings is limited to the submission of proposed findings of fact and conclusions of law to the district court. Any final order or judgment concerning a non-core proceeding is entered by the district judge. 28 U.S.C. § 157(c)(1).

## C. *Core Proceedings*

Section 157(b)(1) of title 28 provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." Specifically, core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

"[S]ection 157 apparently equates core proceedings with the categories of 'arising under' and 'arising in' proceedings." *Wood, supra,* 825 F.2d at 96. Support for this conclusion is found in an examination of the nature of each of the illustrative proceedings as well as the fact that § 157(b)(1) vests judicial power in bankruptcy courts over "core proceedings arising under title 11, or arising in a case under title 11," but does not refer to "related" matters. "To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement." *Acolyte Electric Corp. v. City of New York,* 69 B.R. 155, 173 (Bankr. E.D.N.Y.1986).

## D. *Non–Core or Related Proceedings*

By statutory definition a non-core proceeding is a proceeding that is "otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). In the Sixth Circuit a broad definition of "related to" has been adopted:

The emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.

Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction "only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate...." [citation omitted] Another test finds jurisdiction "whenever the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy." [citation omitted] Although situations may arise where

an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws. *Salem Mortgage, supra,* 783 F.2d at 633–634.

## IV. ADVERSARY PROCEEDINGS SUB JUDICE

Prior to abstaining from deciding Adversary Proceeding 3–81–0337 and remanding Adversary Proceeding 3–81–0428, Judge Anderson ruled that bankruptcy jurisdiction existed over the adversary proceedings. Because his ruling preceded *Northern Pipeline,* there was, of course, no finding regarding whether the adversary proceedings were "core" or "non-core" matters. Implicit in his ruling, however, was a finding that the adversary proceedings were at least "related to" Debtor's bankruptcy case. No reason has been advanced to disturb Judge Anderson's conclusion in this regard nor was any appeal made from his finding of bankruptcy jurisdiction.

■ Initially, the "core" or "non-core" ("related") nature of the adversary proceedings should be examined with respect to the period following the enactment of "BAFJA" but prior to the closing of the Debtor's bankruptcy estate. Adversary Proceeding 3–81–0337 is simply a complaint of Debtor against two non-creditors for money advanced to the defendants. Debtor does not seek to enforce any right created by the Bankruptcy Code nor does the adversary proceeding concern matters of bankruptcy administration. Indeed, the complaint sets forth a simple state law cause of action as was the case in the archetypical "related to" case of *Northern Pipeline* wherein the debtor sued a noncreditor for breaches of contract and warranty. As was the case in *Northern Pipeline,* the instant lawsuit is only before this court because a petition in bankruptcy has been filed. "The thrust of the *Northern Pipeline* holding is that peripheral, non-traditional bankruptcy issues such as claims by the bankrupt against non-creditors cannot be adjudicated by a non-Art. III judge."

*White Motor, supra,* 704 F.2d at 263. This adversary proceeding is, therefore, not a "core" proceeding, but is "related to" Debtor's bankruptcy case.

■ Adversary Proceeding 3–81–0428, the removed state action, involves a complaint by a partner of Debtor against individuals who are not creditors of Debtor. Debtor was not involved in the state court action. However, Judge Anderson found that the claims stated in the state court complaint arose from the same continuing transaction, which was the subject of Adversary Proceeding 3–81–0337, and ruled that bankruptcy jurisdiction existed for Adversary Proceeding 3–81–0428. As mentioned above, the latter adversary proceeding is at least "related to" Debtor's bankruptcy case. Debtor's bankruptcy schedules alleged an interest in the real estate which is part of the subject matter of Adversary Proceeding 3–81–0428, thereby permitting the conclusion that some "core" matters might be involved in adjudicating this adversary proceeding. However, it is a partner of Debtor, not Debtor, who is seeking money damages from noncreditors and demanding that the real estate be restored to him. Measured against *Northern Pipeline*'s prohibition of non-Art. III judges adjudicating peripheral, non-traditional bankruptcy issues, it is this court's opinion that a bankruptcy court should not decide an adversary proceeding with both "core" and "non-core" matters, unless the core aspects of the adversary proceeding are heavily predominant and the "non-core" aspects are insignificant. *See Blackman v. Seton (In re Blackman),* 55 B.R. 437, 443 (Bankr.D.C.1985). Such is not the case here. Viewed as a whole, the complaint is predominantly concerned with noncore matters and should be treated as a "related to" proceeding.

Although a core/non-core determination is important to the final part of this decision regarding the lapse of bankruptcy jurisdiction, the distinction is not procedurally critical at this juncture.

### A. *Consent to Decision by the Bankruptcy Judge*

■ Normally a bankruptcy judge may not enter a final order or judgment in a

proceeding that is "related to" a case under title 11, but instead submits proposed findings of fact and conclusions of law to the district court which enters the final judgment or order. 28 U.S.C. § 157(c)(1). For this reason it is important to initially make the distinction between "core" and "related" matters. However, a bankruptcy judge may make a final judgment or order in a "related" proceeding if the parties have consented to such a final adjudication. 28 U.S.C. § 157(c)(2). In the Sixth Circuit the absence of a timely objection to a bankruptcy court's final determination of a "related to" proceeding constitutes implied consent:

> A related proceeding with the consent of all parties functionally has the same effect as a core proceeding, permitting the bankruptcy court to entertain jurisdiction over the matter and to enter a final judgment, order, or decree.
>
> . . . .
>
> ... Even if express consent has not been proven, we agree with recent cases in the bankruptcy courts that have supported the notion that the absence of a timely objection to the bankruptcy court's jurisdiction constitutes implied consent to the resolution of the controversy. *DuVoisin v. Foster (In re Southern Industrial Banking Corp.),* 809 F.2d 329, 331 (6th Cir.1987).

No objection to this court making a final determination of these two adversary proceedings has ever been filed by any party. Therefore, it is of little procedural importance at this time whether the proceedings are characterized as "core" or "non-core"; in either event they would be heard and finally determined by this court. The "non-core" nature of these adversary proceedings is significant, however, with respect to the continuation of jurisdiction after the bankruptcy estate of Debtor was closed.

### B.  *Lapse of Bankruptcy Jurisdiction*

The course of Debtor's chapter 11 bankruptcy case has differed from that of the typical chapter 11 case because the court appointed a trustee to represent the bankruptcy estate rather than permitting Debtor to remain in possession. On July 25, 1986 the trustee proposed a plan of liquidation. The court signed an order on September 9, 1986 which instructed all creditors seeking payment from the estate to file new proofs of claims with the court and the trustee by November 19, 1986. (The requirement of filing new proofs of claims was necessary because of the inaccuracy of the original bankruptcy records and the passage of a great deal of time since the filing of the original bankruptcy petition.)

On November 21, 1986 the court entered an order confirming the trustee's liquidating plan. After payment of administrative expenses, the trustee disbursed a total of $4,388 to two creditors. Because of the failure of most creditors to file proofs of claims, there remained a surplus of funds ($7,916) for the benefit of Debtor which was paid to Debtor's partners—Fred E. Gagel and W & F Investments Company. On March 20, 1987 the trustee filed his final account with the court indicating that all provisions of the plan had been carried out and requesting his discharge as trustee of the bankruptcy estate. On March 25, 1987 the court entered an order approving the trustee's final account, discharging the trustee, and closing the bankruptcy estate. No motion to reopen the estate has been made.

It must now be decided whether bankruptcy jurisdiction has continued to enable the court to adjudicate these two adversary proceedings despite the closing of Debtor's underlying bankruptcy case. As a general rule jurisdiction over bankruptcy proceedings ceases with the closing of a bankruptcy estate. *See Home Insurance Company v. Thomas Duckett Construction Company, Inc. (In re Rush),* 49 B.R. 158 (Bankr. N.D.Ala.1985). There are, however, considerable exceptions to this rule and Congress has indicated that, even after a bankruptcy case is closed, bankruptcy jurisdiction continues to exist to hear matters involving claims made *under* a provision of title 11:

> The use of the term "proceeding," though, is not intended to confine the bankruptcy case. Very often, issues will arise after the case is closed, such as over the validity of a purported reaffir-

mation agreement, proposed 11 U.S.C. 524(b), the existence of prohibited post-bankruptcy discrimination, proposed 11 U.S.C. 525, the validity of securities issued under a reorganization plan, and so on. The bankruptcy courts will be able to hear these proceedings *because they arise under title 11.*" H.R.Rep. No. 595, *supra,* at 445, U.S.Code Cong. & Admin. News 1978, at 6401 (Emphasis Supplied).

■ Thus, this court finds a clear congressional intent that bankruptcy jurisdiction continues for the purpose of deciding proceedings "arising under" title 11, despite the closing of the bankruptcy case. (Congressional intent with respect to proceedings "arising in" title 11 cases is less certain.) But this court discerns no Congressional intent that bankruptcy jurisdiction should continue for matters not involving the enforcement of rights created by title 11, but that are merely "related to" cases under title 11. Although there may be some narrow exceptions for the continuance of jurisdiction, even with regard to "related to" proceedings following the closing of the bankruptcy case, *see, e.g., Stardust Inn, Inc. v. Doshi (In re Stardust Inn, Inc.),* 70 B.R. 888 (Bankr.E.D.Pa.1987) (Adversary proceeding had gone to trial without court's knowledge of dismissal of underlying bankruptcy case); *Auto Auction, Inc. v. Pocklington (In re Pocklington),* 21 B.R. 199 (Bankr.S.D.Cal.1982) (Bankruptcy court only forum available and court had already received testimony); *Diversified Mortgage Investors, Inc. v. Lake Tahoe Land Co., Inc. (In re Lake Tahoe Land Co., Inc.),* 12 B.R. 479 (Bankr. Nev.1981) (Bankruptcy court was only court with jurisdiction at time complaint was filed), no extenuating circumstances are present here to justify the retention of jurisdiction for a "related to" matter. In Adversary Proceeding 3–81–0428 the existence of another suitable forum is self-evident from the case's status as a removed proceeding. In Adversary Proceeding 3–81–0037 the trustee succeeded to the right to prosecute the action. For whatever reason, he never chose to proceed in this action and having elected to request the court to close the estate he would surely be

estopped from claiming the adversary proceeding must now be determined. In any event, the trustee has displayed no interest in pursuing this litigation.

In addition to concluding that the closing of Debtor's estate resulted in the lapse of bankruptcy jurisdiction over these "related to" adversary proceedings, further examination of the current status of these proceedings convinces the court that they are presently no longer even "related to" Debtor's bankruptcy case. In their present posture, despite a broad interpretation of bankruptcy jurisdiction, these adversary proceedings have such an "extremely tenuous connection to the estate" that they fail to satisfy the jurisdictional requirement of "related to" jurisdiction. See *Salem Mortgage, supra,* 783 F.2d at 634.

In Adversary Proceeding 3–81–0337 Debtor seeks $102,483 from H. Garrett Frey and Kingston Green Partners, Ltd. Although, as mentioned above, the trustee became legally entitled, as a result of his appointment to prosecute this adversary proceeding, he simply did not do so. Even if someone stepped forward to pursue the litigation on behalf of Debtor, it is clear that there would be no benefit to any creditors of Debtor. Because all of Debtor's debts have been discharged by virtue of 11 U.S.C. § 1141 and Debtor's estate has been fully administered, any recovery in this adversary proceeding would be treated as surplus funds and distributed to Debtor's partners—Frederic E. Gagel and W & F Investment Company.

For purposes of Adversary Proceeding 3–81–0428, the removed state lawsuit, an important aspect of the closing of Debtor's bankruptcy case is that it resulted in the abandonment of any property scheduled by Debtor:

§ 554 Abandonment of property of the estate

. . . .

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and

administered for purposes of section 350 of this title. 11 U.S.C. § 554(c).

As a result of this deemed abandonment, upon the closing of the bankruptcy estate, any interest the estate may have had in Kingston Greene Apartments was abandoned by the trustee to Debtor. With respect to property no longer part of a bankruptcy estate, bankruptcy jurisdiction lapses and the "state courts are the proper forum for disputes about the property that once was owned by the bankrupts." *In the Matter of Chicago, Rock Island and Pacific RR Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).

Examined as a unit, the basic thrust of these two adversary proceedings is an action by Frederic E. Gagel against H. Garrett Frey and Kingston Greene Partners, Ltd., which involves real estate that is no longer, if it ever was, part of Debtor's estate. This court is unable to find that resolution of these adversary proceedings could have any possible effect upon Debtor's bankruptcy estate. No provision of the Bankruptcy Code is involved, the estate has been fully administered, and any benefit received would not inure to creditors of Debtor. Instead, any recovery by the plaintiffs in these actions would be obtained by Frederic E. Gagel and W & F Investment Company (whose partners are Wilfrey Management Co., the estate of Steven F. Williams, and H. Garrett Frey). Although the participants in these lawsuits are related to one another as a result of complex arrangements of partnerships, that intricate network of partnerships no longer embraces Debtor's bankruptcy *estate*. There is no longer a sufficient jurisdictional nexus between Debtor's estate and the outcome of this litigation. Therefore, the court finds that the Adversary Proceedings are "unrelated to" Debtor's bankruptcy case and no bankruptcy jurisdiction exists to adjudicate them. Each adversary case should be and is dismissed without prejudice.