**In re UNITED SECURITY & COMMU-NICATIONS, INC., Debtor.**

**UNITED SECURITY & COMMUNICATIONS, INC., Plaintiff,**

**v.**

**RITE AID CORPORATION, Defendant.**

**Bankruptcy No. 2–85–02269.**
**Adv. No. 2–86–0114.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Dec. 2, 1988.

David M. Whittaker, Mark S. Miller, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for United Sec. & Communications, Inc.

Michael D. Saad, Squire, Sanders & Dempsey, Columbus, Ohio, for Rite Aid Corp.

Charles M. Caldwell, Office of the United States Trustee, Columbus, Ohio, Asst. U.S. Trustee.

OPINION AND ORDER ON MOTION FOR DETERMINATION OF NON-CORE STATUS AND REPORT AND RECOMMENDATION ON MOTION FOR ABSTENTION

R. GUY COLE, Jr., Bankruptcy Judge.

### Preliminary Statement

This adversary proceeding is before the Court upon the Motion for Determination of Noncore Status and Abstention filed by Rite Aid Corporation ("Rite Aid"). Rite Aid seeks a determination from this Court that the instant action is a noncore proceeding ("Motion"). Rite Aid further requests that the Court abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(2) ("Abstention Request"). The plaintiff-debtor, United Security & Communications, Inc. ("United"), has filed a memorandum in opposition to Rite Aid's Motion and Abstention Request, arguing that its action against Rite Aid is a core matter and that it would not be appropriate for the Court to abstain from hearing this adversary proceeding.

The Court's opinion is divided into two sections in order to accommodate the different procedures established for determining core/noncore status and passing upon a request for abstention. Pursuant to 28 U.S.C. § 157(b)(3), the Court must determine whether this adversary proceeding constitutes a core matter or is a proceeding that is otherwise related to a case under title 11. The Court clearly has the power to enter a dispositive order on the issue of whether this proceeding is core or noncore. 28 U.S.C. § 157(b)(3); *Central Nat'l. Bank v. Kwak*, 49 B.R. 337 (N.D.Ohio 1985); 1 *Collier on Bankruptcy* ¶ 3.01[2][c] at 3–48 to 3–49 (15th ed. 1988) ("Collier"). Hence, Part I of this opinion shall serve as the Court's core/noncore determination, and the Court shall enter a dispositive order on this issue.

The procedure for disposing of Rite Aid's Abstention Request is governed by Bankruptcy Rule ("B.R.") 5011(b), which provides in pertinent part that:

"Unless a district judge orders otherwise, a motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion...."

Under B.R. 9033(b), parties are granted ten (10) days to file objections to the bankruptcy judge's report and recommendation regarding abstention. The district court then shall review the report as well as any objections thereto and issue its ruling on the matter. B.R. 5011(b). Accordingly, Part II of this opinion shall constitute the Court's report and recommendation to the district court on Rite Aid's Abstention Request.

### I. Opinion and Order on Motion for Determination of Noncore Status

#### A. *Factual Background*

The facts pertaining to the jurisdictional issues raised by the Motion are undisputed. United, a Chapter 11 debtor-in-possession, filed an adversary proceeding in this Court

seeking the recovery from Rite Aid of approximately $165,000 in money damages, as well as interest, costs and attorney fees. United's complaint alleges that Rite Aid breached various lease agreements which provided for the installation of burglar alarm systems by United in Rite Aid pharmacies in North Carolina, West Virginia, Kentucky and Virginia. According to the plaintiff, Rite Aid has further breached its lease agreements with the plaintiff by failing to pay for damaged and lost burglar alarm systems and equipment provided by United. In addition to raising the instant issue regarding the Court's subject matter jurisdiction, Rite Aid also has filed an answer which generally denies United's allegations as well as a counter-claim which asserts that United has breached the subject leases by failing to maintain the burglar alarm systems in good working order, by misrepresenting the quality of the security equipment and by installing faulty burglar alarms. Rite Aid's counter-claim seeks recovery of $50,000 in damages purportedly incurred due to a disruption in its business occasioned by United's alleged breach of contract.

## B. *Discussion*

### 1. Introduction

Resolution of the issues raised in the Motion will require this Court to venture into the complex and uncertain area of bankruptcy court jurisdiction. In the wake of the United States Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*) and Congress' subsequent enactment of the Bankruptcy Amendment and Federal Judgeship Act of 1984 ("BAFJA"), a large body of case law addressing the issue of bankruptcy court jurisdiction has arisen. A historical background of the *Marathon* decision and the legislative response thereto is critical to an understanding of the issues raised herein. Thus, before embarking upon a discussion of the specific issues for decision, a brief review of the *Marathon* case and BAFJA's jurisdictional provisions shall be undertaken.

### 2. The Marathon Decision

In an effort to create a more efficient bankruptcy system, Congress enacted the Bankruptcy Reform Act of 1978 ("Reform Act") which conferred pervasive jurisdiction upon the bankruptcy courts. Under the Reform Act, bankruptcy courts were vested with the broad powers of a court of equity, law and admiralty.[1] The Reform Act's expansive grant of jurisdiction was

---

**1.** The grant of pervasive jurisdiction to the bankruptcy court was the primary objective of the drafters of the Reform Act. The limitations on the power of bankruptcy judges to hear and determine controversies under the Bankruptcy Act of 1898—referred to as the summary/plenary syndrome—was deemed to be a major impediment to the expeditious and efficient administration of bankruptcy cases. The summary/plenary jurisdictional scheme which existed under the Bankruptcy Act of 1898 has been described in the following manner:

> In general, the courts of bankruptcy had summary jurisdiction over all matters relating to the administration of the estate and over all disputes involving property in the actual or constructive possession of the court. Certain specific disputes were also within the summary jurisdiction of the courts of bankruptcy. When summary jurisdiction was lacking, a party could consent to the exercise of summary jurisdiction. Bankruptcy judges could hear all matters within the summary jurisdiction of the courts of bankruptcy.
>
> Many actions to collect assets of the estate by the trustee were not within the summary

jurisdiction of the courts of bankruptcy. These were called plenary actions. The most important plenary actions were actions by a trustee to recover on contract and other claims of the estate or for recovery of property from third parties under the preference or fraudulent conveyance sections of the Bankruptcy Act. These actions could be brought in a state court or in the district court if there was diversity or independent federal question jurisdiction. The district court sitting as a court of bankruptcy also had jurisdiction over these plenary actions. A contract or other claim of the estate was only within the district court's plenary bankruptcy jurisdiction if the defendant consented, but consent was not a prerequisite for the commencement of the preference or fraudulent conveyance actions in the district court.

Taggart, *The New Bankruptcy Court System,* 59 Am.Bankr.L.J. 231, 232–33 (1985) (footnotes omitted). *See also,* Countryman, *Scrambling To Define Bankruptcy Jurisdiction: The Chief Justice, The Judicial Conference, and The Legislative Process,* 22 Harv.J. on Legis. 1, 2–7 (1985).

intended to enable a bankruptcy court to hear and determine "contract and other disputes between the debtor and other parties that would otherwise have been resolved in a state or federal district court in the absence of bankruptcy, because the dispute became 'related to' a bankruptcy case upon the filing of a bankruptcy petition by one of the parties." B. Weintraub & A. Resnick, *Bankruptcy Law Manual* ¶ 6.02 at 6–5 (1986).

In *Marathon,* the debtor brought an action in bankruptcy court which sought the recovery of damages for alleged breach of contract and warranty. Arguing that the Reform Act's grant of Article III powers to judges without life tenure and protection against salary diminution was unconstitutional, the defendant sought dismissal of the action. The bankruptcy court denied the request to dismiss. Holding the delegation of authority to the bankruptcy judges under the Reform Act to be unconstitutional, the district court reversed the bankruptcy court. Upon direct appeal to the Supreme Court the district court's decision was affirmed.

Justice Brennan, writing for the plurality, stated that bankruptcy courts are not Article III courts because their judges do not have life tenure or protection against salary diminution. The plurality then reviewed the three "exceptions from the general proscription of Art. III"—exceptions which historically have been limited to the Congressional creation of "territorial courts," "courts-martial" and "legislative courts and administrative agencies" that "adjudicate cases involving 'public rights.'" *Marathon,* 458 U.S. at 64–67, 102 S.Ct. at 2867–69, 73 L.Ed.2d at 610–13. Focusing on the "public rights" exception, the Court held that only controversies concerning "public rights", *i.e.,* rights provided to an individual by Congress pursuant to one of its exceptional powers under the Constitution, may be removed from Article III courts and delegated to non-Article III tribunals. *Marathon,* 458 U.S. at 69–70, 102 S.Ct. at 2870–71, 73 L.Ed.2d at 614. Implicit in the Court's reasoning is the recognition that the exceptional powers of Congress under the bankruptcy clause may sometimes allow for such delegations of judicial power:

> But the restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.

458 U.S. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615. With respect to the controversies involving state-created private rights, such as the contract action in *Marathon,* Justice Brennan noted:

> The claim may be adjudicated in federal court on the basis of its relationship to the petition for reorganization. But this relationship does not transform the state-created right into a matter between the Government and the petitioner for reorganization. Even in the absence of the federal scheme, the plaintiff would be able to proceed against the defendant on the state-law contractual claims.

458 U.S. at 72 n. 26, 102 S.Ct. at 2872 n. 26, 73 L.Ed.2d at 615 n. 26.

The Fifth Circuit in *Wood v. Wood (Matter of Wood),* 825 F.2d 90, 96 (5th Cir.1987) succinctly summarized the two key points which may be derived from the language quoted above from Justice Brennan's plurality opinion:

> First, bankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and powers of bankruptcy or, in Justice Brennan's words, controversies "at the core of the federal bankruptcy power." Second, controversies that do not depend on the bankruptcy laws for their existence—suits that could proceed in another court even in the absence of bankruptcy—are not core proceedings. These points are echoed by Chief Justice Burger in his dissent in which he characterized the plurality opinion as follows:

> the Court's holding is limited to the proposition ... that a "traditional" state common-law action, not made subject to a

federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an "Article III court." [458 U.S. at 92, 102 S.Ct. at 2882, 73 L.Ed.2d at 628 (Burger, C.J., dissenting).]

825 F.2d at 96 (footnotes omitted).

Two justices, Justices Rehnquist and O'Connor, concurred with the plurality's result, but not necessarily with Justice Brennan's rationale. Instead, the concurrences were based on the narrower ground that the issues in the lawsuit arose "entirely under state law" and that no case had "gone so far" as to permit a non-Article III court to adjudicate a claim like that asserted by the plaintiff in *Marathon.* 458 U.S. at 90–91, 102 S.Ct. at 2881–82, 73 L.Ed.2d at 627–628 (Rehnquist, J., concurring in the judgment).[2]

In his dissenting opinion, Justice White voiced his concern that the plurality opinion placed undue emphasis upon the existence of state law issues in the proceeding under consideration in *Marathon:*

> [T]he distinction between claims based on state law and those based on federal law disregards the real character of bankruptcy proceedings.... The crucial point to be made is that in the ordinary bankruptcy proceeding the great bulk of creditor claims are claims that have accrued under state law prior to bankruptcy—claims for goods sold, wages, rent, utilities, and the like.... Every such claim must be filed and its validity is subject to adjudication by the bankruptcy court. The existence and validity of such claims recurringly depend on state law. Hence, the bankruptcy judge is constantly enmeshed in state-law issues.

458 U.S. at 96–97, 102 S.Ct. at 2884–85, 73 L.Ed.2d at 631 (White, J., dissenting).

In sum, in invalidating the Reform Act's broad jurisdictional grant to bankruptcy courts, the plurality opinion drew the distinction between "restructuring of debtor-creditor relations which is at the core of the federal bankruptcy power" and "the adjudication of state created private rights to recover contract damages." 458 U.S. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615. The Supreme Court's *Marathon* decision clearly did not implicate the jurisdiction of the bankruptcy courts to hear and determine matters falling within the "traditional" bankruptcy jurisdiction. *Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1580 (2d Cir.1983). Stated differently, the *Marathon* Court's invalidation of the jurisdictional grant of the Reform Act clearly was not on the ground that a bankruptcy court is not empowered to adjudicate traditional bankruptcy matters.

### 3. BAFJA: The Congressional Response to Marathon

In 1984, Congress responded to the Supreme Court's *Marathon* decision by enacting BAFJA. The key jurisdictional provisions of BAFJA are found in 28 U.S.C. §§ 157 and 1334. Each of these jurisdictional provisions, which define the source and limits of the bankruptcy court's subject matter jurisdiction, shall be examined below.

#### (a) *28 U.S.C. Section 1334*

Section 1334 provides in relevant part as follows:

**§ 1334. Bankruptcy cases and proceedings**

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

---

**2.** The Supreme Court's subsequent decisions indicate that its *Marathon* holding should be limited along the lines suggested by concurring Justices Rehnquist and O'Connor:

> The court's holding in ... [*Marathon*] establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising

under state law, without consent of the litigants, and subject only to ordinary appellate review.

*Thomas v. Union Carbide Agric. Products Co.,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed. 2d 409, 422 (1985). *See also, Commodity Futures Trading Comm'n. v. Schor,* 478 U.S. 833, 838–39, 106 S.Ct. 3245, 3251, 92 L.Ed.2d 675, 685 (1985).

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The four categories of matters set forth in § 1334 that are within the jurisdiction of the district court are:

(1) a case under Title 11;

(2) a civil proceeding arising under Title 11;

(3) a civil proceeding arising in a case under Title 11; and

(4) a civil proceeding related to a case under Title 11.

### (i) Cases

As Collier notes, "[t]he 'case' referred to in § 1334(a) is the case upon which all of the proceedings which follow the filing of the petition are predicated." 1 *Collier on Bankruptcy* ¶ 3.01[1][c][i] at 3–20 (15th ed. 1988). Collier adds:

"The grant of jurisdiction in section 1334(a) is 'original' and 'exclusive.' The meaning of the words is plain, and only one point need be noted. The exclusivity of that jurisdiction is intended to make it clear that no jurisdiction over title 11 cases is left to the state courts."

*Id.*

### (ii) Proceedings "Arising Under Title 11"

The term "proceeding" has been broadly defined in the legislative history [3] and its definition is intended to be virtually all-encompassing:

The jurisdiction to be exercised by the bankruptcy courts is of all proceedings arising under title 11 or arising under or related to a case under title 11. The term "proceeding" is used instead of "matters and proceedings," the terminology currently used in the Bankruptcy Act and Rules. As used in this section

everything that occurs in a bankruptcy case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under current bankruptcy law. It also includes and [sic] disputes related to administrative matters in a bankruptcy case.

*Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 633–34 n. 18 (6th Cir. 1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 18, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5804).

The legislative history to the 1978 Reform Act indicates that the terminology "civil proceedings arising under title 11" is intended to have a very specific meaning:

The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. § 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in the subchapter III of chapter 5 of title 11.

H.R.Rep No. 595, 95th Cong., 1st Sess., 445–46, *reprinted in* 1978 U.S.Code & Admin.News 5787, 6400–01. The "arising under" language of 28 U.S.C. § 1334(b) is derived from the phrase "arising under" contained in the Constitution which serves as the basis of federal question jurisdiction. *Van Huffel Tube Corp. v. A & G Indus. (Matter of Van Huffel Tube Corp.)*, 71 B.R. 155, 156–57 (Bankr.N.D.Ohio 1987). According to Collier, the types of proceedings which have been held to arise under Title 11 include the following:

---

**3.** While distinctions exist between the jurisdictional provisions of the Reform Act and BAFJA, significant common threads run throughout the two pieces of legislation. Hence, guidance in interpretation is still furnished by the congressional history of the Reform Act. 1 *Collier on Bankruptcy* ¶ 3.01[1][c][ii] at 3–22 (15th ed. 1988).

[C]auses of action to recover fraudulent conveyances, and avoiding actions brought under section 544(b) of the Bankruptcy Code.

In addition to the civil proceedings mentioned above, other illustrations of proceedings falling within the above grant of jurisdiction come to mind. These include controversies regarding whether to appoint a trustee under Chapter 11, motions to obtain financing with priority over existing liens, confirmation of a plan under chapters 9, 11, 12 or 13, and complaints objecting to the discharge of a debtor. All of these categories of potential disputes arise under title 11.

1 *Collier on Bankruptcy* ¶ 3.01[1][c][iii] at 3–24 to 3–25 (15th ed. 1988). *See also, Gagel v. Kingston–Greene Partners, Ltd. (In re GWF Inv., Ltd.),* 85 B.R. 771, 775 (Bankr.S.D.Ohio 1988) ("For a proceeding to 'arise under' title 11, it appears that a party must be claiming a right or remedy created by one of the specific sections of title 11.").

(iii) Proceedings "Arising in Title 11"

The meaning of the phrase "arising in a case under title 11" is somewhat unclear. This class of civil proceeding essentially constitutes a residual category comprised of proceedings neither arising under title 11 nor related to title 11 cases. With respect to this class of proceeding Collier observes:

The meaning of "arising in" proceedings is not as clear as the previous two classifications. This class of civil proceeding may act as the residual category of civil proceedings, including those which do not arise under title 11, and those which are not related to title 11 cases. "Arising in" proceedings would

encompass such things as administrative matters, "counterclaims by the estate against persons filing claims against the estate," "orders to turn over property of the estate," and "determinations of the validity, extent, or priority of liens." "Arising in" proceedings might also include contempt matters, motions to change the composition of a creditors' committee under section 1102, and motions to appoint trustees and examiners under section 1104. For example, one case has held that an action to recover a postpetition account "arises in the bankruptcy case."

The term "administrative matters," used above, may constitute the principal constituent of "arising in" jurisdiction. This category is illustrated by such things as allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts, and like matters. In none of these instances is there a "cause of action" created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case. Since they are not "related" proceedings, and do not "arise under title 11," they must perforce "arise in" the title 11 proceeding.

1 *Collier on Bankruptcy* ¶ 3.01[1][c][v] at 3–28 to 3–29 (15th ed. 1988) (footnotes omitted).[4] The Fifth Circuit described the meaning of proceedings "arising in" a case under title 11 as follows:

The meaning of "arising in" proceedings ... seems to be a reference to those "administrative" matters that arise *only*

---

**4.** The foregoing passage from Collier, when read in conjunction with the excerpt from Collier set forth on page 950–51 of this opinion, illustrates the overlap between the categories of proceedings established by 28 U.S.C. § 1334(b), *viz.,* proceedings "arising under title 11" and proceedings "arising in title 11." For instance, Collier appears to group motions to appoint trustees and examiners in both categories. Yet, as the Court demonstrates below, in ascertaining the limits of bankruptcy court jurisdiction, it is not necessary to separate proceedings defin-

itively into the discrete categories of "arising in title 11" or "arising under title 11." Such categories were intended to operate conjunctively to broadly outline the scope of bankruptcy court jurisdiction. S.Rep. No. 989, 95th Cong., 2d Sess., 153–54, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5939–40; *Wood,* 825 F.2d at 96. The crucial determination in ascertaining the bounds of a bankruptcy court's adjudicative powers is whether the proceeding in question is "related to" a case under title 11. *See,* Discussion *infra* at 952–54.

in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

*Wood,* 825 F.2d at 97 (footnotes omitted).

### (iv) Proceedings "Related to Case Under Title 11"

The distinction between "core" and "related" proceedings is the essence of BAFJA's jurisdictional scheme. Collier describes the importance of understanding the category of "related proceedings" as follows:

> The constitutional concerns which led to the *Marathon* case, which were addressed by the Emergency Rule, and whose special treatment runs throughout the 1984 legislation, are most concretely identified with "related" proceedings, *i.e.,* civil proceedings "related to cases under title 11." Related proceedings are afforded special treatment in 28 U.S.C. § 1334(c)(2), are excluded from being treated as "core proceedings" by 28 U.S.C. § 157(b)(1), and are the subject of special procedures contained in section 157(c)(1) and (c)(2). It is therefore of some importance to be able to understand and categorize related proceedings.

1 *Collier on Bankruptcy* ¶ 3.01[1][c][iv] at 3–25 (15th ed. 1988).

BAFJA does not map the contours of the phrase "related proceeding." The test for relatedness which has gained wide acceptance is that articulated by the Third Circuit: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). This concept of "relatedness" has also been embraced by the Sixth Circuit. *Salem Mortgage,* 783 F.2d at 634. *Accord, Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A, Inc.),* 810 F.2d 782, 786 (8th Cir.1987); *Doyle v. Mellon Bank (East) Nat'l. Assoc. (In re Globe Parcel Serv.),* 71 B.R. 323, 326 (E.D.Pa.1987); *Fleet v. United States Consumers Council, Inc. (In re Fleet),* 53 B.R. 833, 838

(Bankr.E.D.Pa.1985); *Gallo v. Herpich (In re Cemetery Dev. Corp.),* 59 B.R. 115 (Bankr.M.D.La.1986); *Taxel v. Commercebank (In re World Fin. Serv. Center, Inc.),* 64 B.R. 980, 988 (Bankr.S.D.Cal. 1986). The concept of relatedness shall be discussed in more detail below in conjunction with the Court's analysis of 28 U.S.C. § 157.

### (b) *The Reform Act and BAFJA Compared*

The language of § 1334(b) was taken verbatim from § 1471(b) of the Reform Act. Hence, in attempting to define the scope of bankruptcy court jurisdiction, the legislative history and judicial constructions of the Reform Act are instructive interpretative tools. *Carlton v. BAWW, Inc.,* 751 F.2d 781, 787 n. 7 (5th Cir.1985); *Salem Mortgage,* 783 F.2d at 632–34; *Wood,* 825 F.2d at 92 n. 5; *Cemetery Dev. Corp.,* 59 B.R. at 121. The legislative history of the Reform Act reveals that the phrases "arising under title 11," "arising in title 11" and "related to cases under title 11" were not intended to distinguish between different categories of matters. Instead, these phrases were meant to operate conjunctively so as to broadly define the scope of bankruptcy court jurisdiction. S.Rep. No. 989, 95th Cong., 2d Sess., 153–54, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5939–40. Because Congress intended to eliminate the piecemeal litigation of matters affecting the administration of bankruptcy cases, its grant of jurisdiction to federal courts was very broad. The power to adjudicate all matters having an effect on the bankruptcy was conferred. *Id.; Pacor,* 743 F.2d at 994; *Salem Mortgage,* 783 F.2d at 633–34; *Wood,* 825 F.2d at 92; *Cemetery Dev. Corp.,* 59 B.R. at 121.

While the wording of § 1334(b) is identical to that of former § 1471(b), the crucial distinction between these statutory provisions is that, under BAFJA, jurisdiction is no longer automatically shifted from the district court to the bankruptcy courts as it was pursuant to § 1471(c) of the Reform Act. The *Marathon* decision did not take

issue with the scope and extent of bankruptcy jurisdiction under the Reform Act but, instead, found the automatic shift of such jurisdiction to non-Article III courts to be unconstitutional. The case law indicates that the scope of bankruptcy jurisdiction under BAFJA is identical to that under the Reform Act; however, the placement of bankruptcy jurisdiction has been altered:

Nothing in *Marathon* suggests that we should read the corresponding provisions of the 1984 Act differently. The jurisdictional provision of the 1978 Act, section 1471, accomplished two things. First, subsection (b) vested an expansive bankruptcy jurisdiction in the district courts. Second, subsection (c) conferred the power to exercise that jurisdictional grant in the bankruptcy courts. The issue in *Marathon* was not the constitutionality of subsection (b), but the constitutionality of subsection (c). *Marathon* held that Congress could not vest the whole of bankruptcy jurisdiction in bankruptcy courts because the jurisdictional grant encompassed proceedings too far removed from the "core" of traditional bankruptcy powers to allow them to be adjudicated by non-Article III judges. The holding in *Marathon* suggests no concern over the constitutionality of the scope of bankruptcy jurisdiction defined by Congress; its concern is with the placement of that jurisdiction in non-Article III courts. In response to *Marathon*, Congress altered the placement of bankruptcy jurisdiction by creating a statutory distinction between core and non-core proceedings and restricting the power of bankruptcy courts to adjudicate the latter. Because *Marathon* did not compel Congress to reduce the scope of bankruptcy jurisdiction, it seems plain that Congress intended no change in the scope of jurisdiction set forth in the 1978 Act when it later enacted section 1334 of the 1984 Act.

*Wood*, 825 F.2d at 92–93 (footnotes omitted). The Sixth Circuit reached the same conclusion in its *Salem Mortgage* decision:

After the Supreme Court struck down section 1471(c) in *Northern Pipeline* ..., Congress enacted the new jurisdictional statute in 28 U.S.C. § 1334.... Section 1334(a)–(b) retains the prior jurisdictional language, and there is every reason to believe that Congress had no desire to contract the jurisdictional grant in any way. Congress could, after all, have easily cured the constitutional infirmity announced in *Northern Pipeline* by restricting the bankruptcy courts to their prior jurisdiction under the Bankruptcy Act of 1898.

*Salem Mortgage*, 783 F.2d at 633 n. 17.

■ As the foregoing discussion indicates, in enacting BAFJA Congress did not constrict the scope of bankruptcy jurisdiction, it merely changed the locus of such jurisdiction, *i.e.*, it removed the jurisdiction to enter dispositive orders without consent of the parties in "related proceedings" from the bankruptcy court and placed such jurisdiction in the district court. Hence, in attempting to define the limits of bankruptcy jurisdiction under BAFJA, it is not necessary to ascribe precise meanings to the phrases "arising under title 11" or "arising in title 11." Under 28 U.S.C. § 157, which is discussed in detail *infra*, the categories of "arising under" and "arising in" are equated with core proceedings. *Wood*, 825 F.2d at 96. The jurisdictional parameters of a bankruptcy court under 28 U.S.C. § 1334(b) are delimited by ascertaining whether a given civil proceeding is "related to" a case under title 11.

(c) *28 U.S.C. § 157: The Core/Noncore Dichotomy*

Section 157 of BAFJA provides in relevant part as follows:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

Section 157 embodies the principles set forth in *Marathon.* The core/noncore dichotomy established by § 157 is based upon the distinction articulated by the *Marathon* plurality between the "restructuring of debtor-creditor relations which is at the core of the federal bankruptcy power" and the "adjudication of state-created private rights." *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615. Thus, BAFJA distinguishes between proceedings "arising under" and "arising in," designated as core,[5] which may be heard and determined by bankruptcy judges, who do not have Article III status, and "related" proceedings (like the breach of contract action in *Marathon*) involving common law actions which are merely peripherally related to the adjudication of bankruptcy under federal law. Bankruptcy judges are denied the power under BAFJA to hear and determine such "related" matters. Accordingly, § 157 empowers non-Article III bankruptcy judges to assist the district court in the administration of bankruptcy cases by disposing of "core" proceedings, but does not vest the essential attributes of Article III judicial power in the bankruptcy courts.

As one bankruptcy court has recently noted, attempting to draw the distinction between core and noncore proceedings is, at times, a "Sisyphean task." *Unsecured Creditors Comm. v. Noyes (In re STN Enter., Inc.),* 73 B.R. 470, 479 (Bankr.D.Vt. 1987). The term "core" has not been defined by Congress, nor is it limited to the non-exclusive list of matters set forth in 28 U.S.C. § 157(b)(2). Courts have formulated a number of tests for distinguishing between core and noncore proceedings. The following articulation by the Fifth Circuit is representative of the judicial formulations applied by courts in drawing the line between core and noncore proceedings:

If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could

---

5. *See, Wood,* 825 F.2d at 96; *GWF Inv., Ltd.,* 85 B.R. at 777.

exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or noncore proceeding.

....

[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.

*Wood,* 825 F.2d at 97. The foregoing test is seemingly quite straightforward; however, its application to the myriad of disputes which routinely come before the bankruptcy judge has engendered little predictability in this area of the law. In large part, this lack of predictability can be traced to Justice White's astute observation in *Marathon:* because questions of state law are inextricably intertwined with all phases of a bankruptcy proceeding, the bankruptcy judge is "constantly enmeshed in state law issues." *Marathon,* 458 U.S. at 96–97, 102 S.Ct. at 2884–85, 73 L.Ed.2d at 631 (White, J., dissenting). Thus, no bright-line test has emerged from the case law separating those state law issues which can be heard and finally determined by the bankruptcy judge under § 157(b)(1) and (2), *viz,* the state law issues that are essential to the restructuring of debtor-creditor relations and which lie at the core of federal bankruptcy power, from state-created rights which, like the lawsuit in *Marathon,* can only be heard by a bankruptcy judge under § 157(c)(1) or (2). In sum, because the bankruptcy court is presented with innumerable hybrid factual situations in which state law issues are interwoven throughout the bankruptcy proceeding, an absolute construction of § 157 has not arisen.

While the precedents arising from core/noncore determinations under § 157 are not readily synthesized, generally speaking, two basic views of the core/noncore dichotomy may be derived from the decisional law. Some courts have interpreted "core proceeding" expansively, while others have given the term a more narrow construction. The First Circuit, in *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165 (1st Cir.1987) (holding that an action to collect an account receivable arising post-petition is a core proceeding), concluded that "core proceeding" should be interpreted broadly:

[T]he legislative history of the new statute indicates that Congress intended that "core proceedings" would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings.... They used arguments strongly suggesting that they were pressing the notion to its constitutional bounds. They referred to the suits in the non-core category as "Marathon-type" cases, ... which they understood to be proceedings of "a very limited kind".... Representative Kastenmeier said that "jurisdiction in core bankruptcy proceedings is broader than the summary jurisdiction under pre–1978 law"....

815 F.2d at 168 (citations omitted). *See also, In re Mankin,* 823 F.d 1296, 1301 (9th Cir.1987) ("Nothing in the legislative history of § 157(b) suggests that Congress enumerated examples of core proceedings in § 157(b)(2) with anything but a view toward expanding the bankruptcy court's jurisdiction to its constitutional limit...."). Other courts espouse a narrow construction of "core proceeding." *See, Mohawk Indus., Inc. v. Robinson Indus., Inc.,* 46 B.R. 464, 466 (D.Mass.1985) (Breach of warranty is noncore because it is a "right traditionally cognizable in Article III courts."); *Climate Control Eng'rs. v. Southern Landmark, Inc. (Matter of Climate Control Eng'rs., Inc.),* 51 B.R. 359 (Bankr.M.D.Fla.1985); *Zweygardt v. Colorado Nat'l. Bank,* 52 B.R. 229 (Bankr.D. Colo.1985); *Nanodata Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.),* 52 B.R. 334 (Bankr.W.D.N.Y. 1985); *Shaford Cos. Inc. v. CURR Int'l. Coffees, Inc. (In re Shaford Cos., Inc.),* 52 B.R. 832 (Bankr.D.N.H.1985). This line of authority has been described as follows:

These cases state that *Marathon* mandates that in a case solely involving state created rights (e.g., all common law causes of action), a bankruptcy court is without jurisdiction under Article III to adjudicate the claims if the claims would exist independently of the bankruptcy proceedings. In other words, for a case to be considered a core proceeding, the case would not exist 'but for' bankruptcy.

*Jefferson Nat'l. Bank v. I.A. Durbin, Inc. (In re I.A. Durbin, Inc.),* 62 B.R. 139, 141–42 (S.D.Fla.1986).

Civil proceedings involving the assertion of rights created under state law spawn the greatest degree of divergence in the case law. Parties seeking to invoke the jurisdiction of the bankruptcy court in such cases typically rely upon 28 U.S.C. § 157(b)(2)(A) and (O) as the jurisdictional predicate. The general language of § 157(b)(2)(A)—"matters concerning the administration of the estate"—and (O)—"other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship"—may be contrasted with the more specific provisions of § 157(b)(2)(B) through (N). These sections have been referred to as the "catchall" provisions of § 157(b)(2). *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159, 161 (9th Cir.1986); King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand.L.Rev. 675, 687–88 (1985).

United relies upon § 157(b)(2)(A) and (O) in arguing that the instant adversary proceeding is a core matter. United Memorandum at 6–7. United characterizes the instant lawsuit as an action to collect an account receivable and asserts that, because its ability to fund a plan is dependent upon its success in this litigation, the Court should classify the action *sub judice* as a "core proceeding." As further support for its assertion of core status, United cites the salutary impact which the prompt resolution of this dispute in a specialized court would have upon the bankruptcy estate. Finally, according to United, § 157(b)(2)(E)—which stipulates that an ac-

tion by a party seeking a turnover order pursuant to 11 U.S.C. § 542 is a core proceeding—also vests jurisdiction in the Court to hear and determine this adversary proceeding. Rite Aid rejoins by arguing that United's action may not be classified properly as a core matter under § 157(b)(2)(A), (E), or (O). The respective arguments of the parties shall be examined below.

### 4. The Arguments of the Parties

#### (a) *Jurisdiction Under § 157(b)(2)(A) and (O): The "Catchall" Provisions*

■ According to United, its ability to fund a plan of reorganization hinges upon successful litigation of the instant action to collect an account receivable allegedly owed by Rite Aid. In addition, United posits that the prompt resolution of this accounts receivable action in a specialized, adjunct court "is vital to estate administration." United Memorandum at 7. Consequently, United argues that this lawsuit is a core proceeding under the so-called "catchall" provisions of § 157(b)(2)(A) and (O). Support for United's position may be found in the following cases: *Lesser v. A–Z Assocs. (In re Lion Capital Group),* 46 B.R. 850 (Bankr.S.D.N.Y.1985), *aff'd.,* 63 B.R. 199 (S.D.N.Y.1986); *Baldwin–United Corp. v. Thompson (In re Baldwin–United Corp.),* 48 B.R. 49 (Bankr.S.,D. Ohio 1985); *Allard v. Benjamin (In re DeLorean Motor Co.),* 49 B.R. 900 (Bankr.E.D. Mich.1985); *Fisher v. Ins. Co. of the State of Pennsylvania (In re Pied Piper Casuals, Inc.),* 50 B.R. 549 (Bankr.S.D.N.Y. 1985); *L.A. Clarke & Son, Inc. v. Bullock Constr., Inc. (In re L.A. Clarke & Son, Inc.),* 51 B.R. 31 (Bankr.D.C.1985); *National Equip. & Mold Corp. v. Apollo Tire Co., Inc. (In re National Equip. & Mold Corp.),* 60 B.R. 133 (Bankr.N.D.Ohio 1986); *Mansker v. Campbell (In re Mansker),* 60 B.R. 803 (Bankr.D.Mass.1986); *Franklin Computer Corp. v. Apple Computer (In re Franklin Computer Corp.),* 60 B.R. 795 (Bankr.E.D.Pa.1986); *In re Windsor Communications Group,* 67 B.R. 692 (Bankr.E. D.Pa.1986); *Allegheny, Inc. v. Laniado*

*Wholesale Co. (In re Allegheny, Inc.)*, 68 B.R. 183 (Bankr.W.D.Pa.1986). In each of the above decisions the courts concluded that *Marathon* -type, state law contract actions are properly designated as core proceedings under the catchall provisions of § 157(b)(2)(A) and (O). This conclusion was based, *inter alia*, upon the need to dispose expeditiously of such litigation in a specialized court in order to avoid the delay which inevitably would attend the referral of the cases to crowded district and state court dockets. *See, e.g., Lion Capital*, 46 B.R. at 860. The salutary impact that successful resolution of such traditional contract actions will have upon the estate is another oft-cited rationale underlying this line of authority. *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 175 (Bankr.E.D.N.Y.1986).

The analysis of the cases set forth above, and likewise, the logic of United's argument, is not convincing. As Judge Holland noted in his comprehensive and scholarly *Acolyte* decision, if the reasoning of the cases which broadly construe "core proceeding" were accepted, then "[the Marathon lawsuit] would constitute a core proceeding" and BAFJA would suffer the same constitutional infirmity condemned by the *Marathon* Court. *Acolyte*, 69 B.R. at 172. The clear majority, and better-reasoned, view is that state law, contract-type actions, such as the lawsuit before the Court here, which literally fall within the broad catchall language of 28 U.S.C. § 157(b)(2)(A) and (O), are noncore, "related" proceedings. *See, In re Castlerock Properties*, 781 F.2d at 161; *K–Rom Constr. Corp. v. Behling (In re K–Rom Constr. Corp.)*, 46 B.R. 745 (S.D.N.Y.1985); *Interconnect Telephone Servs., Inc. v. Farren*, 59 B.R. 397 (S.D.N.Y.1986); *In re Shafer & Miller Indus.*, 66 B.R. 578 (S.D.Fla.1986); *Mohawk Indus., Inc.*, 46 B.R. at 465–66; *Morse Elec. Co., Inc. v. Logicon, Inc. (In re Morse Elec. Co., Inc.)*, 47 B.R. 234 (Bankr.N.D.Ind.1985); *Bokum Resources Corp. v. Long Island Lighting Co. (In re Bokum Resources Corp.)*, 49 B.R. 854 (Bankr.N.M.1985); *Cameron v. Anderson (In re American Energy, Inc.)*, 50 B.R. 175 (Bankr.N.D.1985); *Braucher v.*

*Continental Ill. Nat'l. Bank & Trust Co. of Chicago (In re Ill. Cal. Express, Inc.)*, 50 B.R. 232 (Bankr.Colo.1985); *Shaford Cos., Inc.*, 52 B.R. at 836; *Nanodata Computer Corp.*, 52 B.R. at 343; *Taxel v. Veri-Fone, Inc. (In re American Mfg. Technologies, Inc.)*, 60 B.R. 645 (Bankr.S.D.Cal.1986); *R.I. Lithograph Corp. v. Aetna Cas. & Sur. Company (In re R.I. Lithograph Corp.)*, 60 B.R. 199 (Bankr.R.I.1986); *Acolyte*, 69 B.R. at 172–75; *STN Enter., Inc.*, 73 B.R. at 481; *GWF Inv., Ltd.*, 85 B.R. at 777–78. *See also*, 1 *Collier on Bankruptcy* ¶ 3.01[2][iv] at 3–46 to 3–47 (15th ed. 1988). The *ratio decidendi* of the decisions set forth above was aptly described by the *Acolyte* court:

> Underlying ... [the cases which construe the meaning of "core proceeding" expansively] is the notion that a traditional contract-type action which can be litigated promptly in the bankruptcy court should be considered core since a successful resolution would have a salutary impact on the estate. There is no doubt that such a result would have a relation to and an impact upon the administration of the estate. However, no matter how desirable the result would be, such "nexus" in and of itself is insufficient to warrant classifying the matter as a core proceeding unless BAFJA is to be read as ignoring *Marathon*.

*Acolyte*, 69 B.R. at 175. The *Acolyte* court also stated as follows:

> To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement. Congress gave bankruptcy courts flexibility to carry out the provisions of Title 11 by inserting the catchall provisions in the framework of § 157 realizing that situations not foreseeable at the time of BAFJA's enactment would have to be dealt with in that court. However, any reasonable reading of §§ 157(b)(2)(A) and (O) should be kept within this framework and therefore within the holding in *Marathon*.

69 B.R. at 173–74. Hence, as the *Acolyte* court noted, the clear weight of authority establishes that the catchall provisions of § 157(b)(2)(A) and (O) must be construed in a manner which does not derogate the constitutional principles which emanated from *Marathon*.

This Court embraces the rationale of the *Acolyte* decision and the line of authority which it represents. To be sure, § 157(b)(2)(A) and (O) should not be read so expansively as to bring *Marathon*-type contract actions, such as the lawsuit at bar, within the scope of core proceedings. Rather, the phrase "core proceeding" must be construed in a fashion which conforms to the constitutional proscription of *Marathon*. Accordingly, the instant adversary proceeding may not be classified as a core proceeding under § 157(b)(2)(A) and (O)'s catchall provisions.[6]

### (b) *Jurisdiction Under § 157(b)(2)(E): A Turnover Proceeding*

United argues that this lawsuit should be held to be core under § 157(b)(2)(E), which provides that an action commenced by a party seeking a turnover order pursuant to 11 U.S.C. § 542 is a core proceeding. United Memorandum at 6. In support of its assertion, United cites the case of *Franklin Computer*, wherein the bankruptcy court stated:

> Under § 157(b)(2)(E) core matters also embrace proceedings "to turn over property of the estate." The bankruptcy judge clearly may enter a final order directing the surrender of tangible estate property when it is in the possession of an entity other than the debtor or the trustee. Such an action is akin to the collection of money notwithstanding its liquid fungible nature and the courts have so held.

50 B.R. at 625. The Court need not dwell at length on United's contention that the lawsuit at bar is a core turnover proceeding. After collecting and analyzing the cases dealing with this issue, the *Acolyte* court rejected a similar argument in support of classifying an accounts receivable action as a core turnover proceeding. In reaching its decision, the court in *Acolyte* recited the following rule:

> A turnover proceeding can only be considered a core proceeding under § 542(b) when its purpose is the collection rather than the creation, recognition, or liquidation of a matured debt....
>
> When a bona fide dispute exists as to liability involving state law, then the proceeding cannot be core under § 157(b)(2)(E).
>
> ....
>
> In this adversary proceeding there is a legitimate dispute as to whether ... [the debtor] is entitled to recover the funds claimed due under the contract. Since a resolution of this action, involves a state law determination of the defendant's liability under the contract, it is a step away from a true § 542 turnover proceeding and, therefore, does not constitute a core proceeding under § 157(b)(2)(E).

69 B.R. at 172. *Accord, Atlas Automation, Inc. v. Jensen, Inc. (In re Atlas Automation, Inc.),* 42 B.R. 246 (Bankr.E.D. Mich.1984); *George Woloch Co., Inc. v. Longview Capital Plastic Pipe, Inc. (Matter of George Woloch Co., Inc.),* 49 B.R. 68 (Bankr.E.D.Pa.1985); *Bokum Resources Corp.,* 49 B.R. at 866; *Maislin Indus. U.S., Inc. v. C.J. Van Houten E. Zoon, Inc. (In re Maislin Indus. U.S., Inc.),* 50 B.R. 943 (Bankr.E.D.Mich.1985); *Palmisano v. Briggs (In re Northern Design Inc.),* 53 B.R. 25 (Bankr.D.Vt.1985); *Satelco, Inc. v. North American Publishers, Inc. (In re Satelco),* 58 B.R. 781, 789 (Bankr.N.D.Tex. 1986) ("[A]ctions to collect accounts receivable based upon state law contract princi-

---

**6.** The Court also discards United's contention that this adversary proceeding should be held to be core because its outcome "could conceivably have ... [an] effect upon the estate being administered in bankruptcy." United Memorandum at 3. The outcome of the lawsuit at bench plainly will have a substantial impact upon the estate and debtor's ability to fund a plan. Even so, this fact is sufficient only to support a finding that this lawsuit is a related proceeding, not that the action is a core proceeding. *See, Salem Mortgage,* 783 F.2d at 634; *Acolyte,* 69 B.R. at 175.

ples do not fall within the scope of turnover actions as contemplated by § 542 and § 157(B)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability."); *Century Brass Prod., Inc. v. Millard Metals Serv. Center, Inc. (Matter of Century Brass Prod., Inc.)*, 58 B.R. 838 (Bankr.D.Conn.1986); *R.I. Lithograph Corp.*, 60 B.R. at 204; *Sokol v. Massachusetts Mut. Life Ins. Co. (In re Sokol)*, 60 B.R. 294 (Bankr.N.D.Ill.1986); *Britton v. Fessler & Bowman, Inc. (In re Britton)*, 66 B.R. 572 (Bankr.E.D.Mich. 1986). *Contra, Lion Capital Group*, 46 B.R. at 856; *Willis v. Ryan (In re Bucyrus Grain Co., Inc.)*, 56 B.R. 204 (Bankr.D. Kan.1986); *National Equip. & Mold Corp.*, 60 B.R. at 135–36; *Windsor Communications Group*, 67 B.R. at 695–96 (all holding that accounts receivable actions constitute core turnover proceedings under § 157(b)(2)(E)). This Court adopts the rule enunciated by the *Acolyte* court and supported by the weight of the decisional authority—*i.e.*, a lawsuit to collect an account receivable does not come within the rubric of a core turnover action. To hold otherwise and construe § 157(b)(2)(E) as encompassing accounts receivable actions would render "the balance of § 157(b)(2) superfluous in most cases." *Britton*, 66 B.R. at 574. Accordingly, because the accounts receivable action before the Court involves a *bona fide* dispute as to liability, the resolution of which is solely dependent upon application of state law contract principles, it cannot be classified as a core turnover proceeding under § 157(b)(2)(E). In sum, United's lawsuit does not constitute a core proceeding; however, because its outcome will

certainly have an impact on the estate, United's action is a related proceeding.

## II. Report and Recommendation on Motion for Abstention

■ Finally, Rite Aid argues that this Court should abstain from hearing the instant adversary proceeding. According to Rite Aid, because this matter turns entirely on state law, abstention is warranted. Rite Aid Memorandum at 11. Under the circumstances of this case, United contends, abstention would not be appropriate.

Discretionary abstention[7] is authorized by 28 U.S.C. § 1334(c)(1), which provides as follows:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The principle of discretionary abstention in the context of a bankruptcy proceeding was first articulated by the Supreme Court in *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1970). Section 1334(c)(1) is based upon former 28 U.S.C. § 1471(d) which, in turn, was a statutory response to the concerns enunciated by the Supreme Court in *Thompson. See, Cemetery Dev. Corp.*, 59 B.R. at 125; *In re Earle Indus., Inc.*, 72 B.R. 131, 133 (Bankr.E.D.Pa.1987); 1 *Collier on Bankruptcy* ¶ 3.01[3][a] at 3–66 to 3–67 (15th ed. 1988). In *Thompson*, the Supreme Court held that a district court, sitting in that case as a bankruptcy court

---

7. Rite Aid makes its request for abstention under 28 U.S.C. § 1334(c)(1), which governs discretionary abstention. Rite Aid has not asserted that the Court must abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(2) which provides for mandatory abstention by a bankruptcy court when the following six-factor test is met:

1. A timely motion for abstention has been filed;
2. The proceeding must be based upon a state law claim or cause of action;
3. The proceeding must relate to a case under title 11 but not arise under title 11 or arise in a case under title 11;

4. The proceeding could not have been commenced in a federal court absent jurisdiction under the Bankruptcy Code;
5. An action involving the same subject matter had already been commenced and is pending in a state court; and
6. The pending state court action can be timely adjudicated.

*See, In re Texaco, Inc.*, 77 B.R. 433, 436–37 (Bankr.S.D.N.Y.1987). Presumably, Rite Aid has not asserted that mandatory abstention is required because an action involving the same subject matter as this adversary proceeding is not pending in a state court.

exercising summary jurisdiction, should have abstained from adjudicating the issue of whether conveyances of certain railroad right of ways had resulted in the grant to an Illinois railroad of an easement permitting surface use of the property in question as opposed to a transfer of fee-simple ownership with the right to exploit the oil that had been discovered beneath the land. The Supreme Court concluded that an adequate basis for the district court's exercise of summary jurisdiction arose from the debtor-railroad's "possession of those lands under a claim of fee-simple ownership." 309 U.S. at 482, 60 S.Ct. at 630, 84 L.Ed. at 880. Finding that the district court's summary jurisdiction extended to adjudication of the question of title, the *Thompson* court nonetheless found the exercise of jurisdiction to be inappropriate in that case:

> A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration.... Unless the matter is referred to the state courts, upon subsequent decision by the Supreme Court of Illinois it may appear that rights in local property of parties to this proceeding have—by the accident of federal jurisdiction—been determined contrary to the law of the state which in such matters is supreme.

309 U.S. at 483–84, 60 S.Ct. at 630–31, 84 L.Ed. at 880–81. The *Thompson* court's holding was restated by the district court in *Scroggins v. Powell, Goldstein, Frazer & Murphy (Matter of Kaleidoscope, Inc.),* 25 B.R. 729 (N.D.Ga.1982), in the following manner:

> It is now a settled rule that bankruptcy abstention is required only if resolution of the state law question will involve the bankruptcy court in matters of substantial public import.... and only if there exists no state court precedent that either answers the precise question

presented or enables the bankruptcy court to predict with reasonable certainty the conclusion that the state courts will reach when ultimately presented with the question.

25 B.R. at 742 (citations omitted).

■ Given the origins of § 1334(c)(1), it is not surprising that most courts have concluded that the primary determinant for the exercise of discretionary abstention is whether the case presents unsettled issues of state law or will involve the bankruptcy court in matters of substantial public import. *Ram Const. Co., Inc. v. Port Authority of Allegheny County,* 49 B.R. 363, 367 (W.D.Pa.1985); *Harley Hotels, Inc. v. Rain's Int'l. Ltd.,* 57 B.R. 773, 781 (M.D. Pa.1985); *Cooper v. Coronet Ins. Co. (Matter of Boughton),* 60 B.R. 373, 376–77 (N.D.Ill.1986); *Baldwin–United Corp.,* 52 B.R. at 548; *Earle Indus., Inc.,* 72 B.R. at 134. A number of other criteria have been identified in the case law as germane to a discretionary abstention determination under § 1334(c)(1). An exhaustive list of the salient factors bearing upon an abstention decision was set forth by Judge Mahoney in *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.),* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987):

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the

proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

In applying the above factors to the facts of the case *sub judice*, the Court is mindful of the fact that abstention is "an extraordinary and narrow exception to the duty of the federal courts to adjudicate controversies which are properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483, *rehearing denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976); *DeLorean Motor Co.*, 49 B.R. at 910; *Charter Crude Oil Company v. Exxon Company, U.S.A. (In re The Charter Co.)*, 82 B.R. 602, 603 (Bankr. M.D.Fla.1988).

■ Application of the decisional criteria discussed above to the present case leads the Court to conclude that abstention would not be appropriate here. The case at bench does not involve unsettled issues of state law or matters of substantial public import; to the contrary, the state law principles governing resolution of debtor's breach of contract action are well-developed. Further, the fact that this proceeding is noncore and presents predominantly issues of state law does not compel abstention. While the resolution of noncore, related state causes of action by state courts is favored, *see, Castlerock Properties*, 781 F.2d at 163; *Smith–Douglass, Inc. v. Smith (In re Smith–Douglass, Inc.)*, 43 B.R. 616 (Bankr.E.D.N.C.1984), the mere presence of state law issues does not mandate abstention. *Harley Hotels, Inc.*, 57 B.R. at 781; *Earle Indus., Inc.*, 72 B.R. at 133.

In the present case, there are two factors militating strongly against abstention. First, abstention would not appear to "assure an economical and expeditious administration of the debtor's estate." *Harley Hotels, Inc.*, 57 B.R. at 782; *Boughton*, 60 B.R. at 377. It seems evident that United will obtain a more expeditious resolution of its claims against Rite Aid in this Court than before a state court. This is particularly important inasmuch as United's claims against Rite Aid constitute property of potentially significant value to the bankruptcy estate. Hence, the outcome of this lawsuit will have a major impact upon United's reorganization effort. Second, Rite Aid has not demanded a jury trial. Had Rite Aid demanded a trial by jury, the Court would lean heavily in favor of abstention because such a proceeding would, in effect, be merely advisory in nature, *i.e.*, the findings of fact made by a jury would be subject to *de novo* review, and conceivably a second jury trial in district court.[8] Here, because Rite Aid has not made a jury demand, the Court believes that the potential for needless duplication of judicial time and effort does not exist. Hence, on balance, abstention is not warranted under 28 U.S.C. § 1334(c)(1). Accordingly, the Court hereby directs the Clerk of the Bankruptcy Court to transmit this opinion, which shall serve as this Court's Report and Recommendation pursuant to B.R. 5011(b), to the Clerk of the District Court for the South-

---

**8.** The Court expresses no opinion on the issue of whether a bankruptcy court is empowered to conduct a jury trial in a related proceeding such as that before the Court here. This question has generated considerable controversy and a split of authority in the decisional law. *See generally, Acolyte*, 69 B.R. at 180–84; *Stewart v. Strasburger (In re Astrocade, Inc.)*, 79 B.R. 983, 989–991 (Bankr.S.D.Ohio 1987). Guidance in this unsettled area is expected to be provided in the near future by the Supreme Court, which recently granted *certiorari* in *Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.)*, 835 F.2d 1341 (11th Cir.1988) *cert. granted*, —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988) to consider the issue of whether there is a right to jury trial in a trustee's action to recover a fraudulent transfer. Here, no jury demand was made by Rite Aid. Had Rite Aid requested a trial by jury of this adversary proceeding, and, assuming *arguendo* that this Court determined that it was empowered to conduct a jury trial, then the potential for a wasteful expenditure of judicial resources would have arisen. Under such circumstances, the district court would review the jury's findings of fact on a *de novo* basis and could elect to conduct a second jury trial. *See,* B.R. 9033(d). Where the possibility of a mere "advisory jury trial" exists, abstention by the bankruptcy court is an appropriate means of avoiding a potential duplication of judicial time and effort. *See, Smith–Douglass, Inc.*, 43 B.R. at 618.

ern District of Ohio, Eastern Division, for assignment to a district judge. The Clerk shall defer transmittal of this Report and Recommendation to the district court until such time as it has been served upon all parties and the ten-day objection period prescribed by B.R. 9033(b) has expired.

IT IS SO ORDERED.